1  **LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)

2  *ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)

3  *skye@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)

4  *alexis@consumersadvocates.com*

5  651 Arroyo Drive
San Diego, California 92103

6  Telephone:  (619) 696-9006

7  Facsimile:  (619) 546-6665

8

9

10  **UNITED STATES DISTRICT COURT**

11  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12  EUNICE JOHNSON, individually, on
behalf of all others similarly situated, and

13  the general public,

14

15  Plaintiff,

16  v.

17  TRIPLE LEAF TEA INC.;

18  Defendant.

19

20

21

22

23

24

25

26

27

28

CASE NO.:
CLASS ACTION

**COMPLAINT FOR:**

1.  **VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT [CIV. CODE §§ 1750, *et seq.*];**

2.  **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF. CODE §§ 17200, *et seq.*];**

3.  **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW [BUS. & PROF. CODE §§ 17500, *et seq.*];**

4.  **BREACH OF EXPRESS WARRANTY;**

5.  **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY;**

DEMAND FOR JURY TRIAL

---

*Johnson v. Triple Leaf Tea Inc*
CLASS ACTION COMPLAINT

Plaintiff EUNICE JOHNSON ("Plaintiff"), by and through her attorneys of record, brings this action on behalf of herself, all others similarly situated, and the general public ("Plaintiff") against Defendant TRIPLE LEAF TEA INC. ("Triple Leaf" or "Defendant"). Plaintiff alleges the following upon their own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of her counsel:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005, as a matter in controversy that exceeds the sum of $5,000,000.00, exclusive of costs and interest.  On information and belief, more than two-thirds of the members of the class are citizens of a state different from the Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.     Personal jurisdiction derives from the fact that Defendant Triple Leaf is incorporated in California, maintains its principal place of business in California, and conducts business within the State of California and within this judicial district.

3.     Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions occurred in this district and because Defendant:

(i) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

(ii)     does substantial business in this district;

(iii)     advertises to consumers residing in this district; and

(iv)     is subject to personal jurisdiction in this district.

## PARTIES

4.     On information and belief, at all times relevant to this matter Defendant Triple Leaf was a California corporation with its principal place of business located at 20 Buena Vista Road, South San Francisco, California 94080.

5.     At all times relevant herein, Defendant Triple Leaf advertised, marketed,

1

distributed, and sold mixtures of botanicals, in tea bags, for the preparation of herbal teas. In particular, Defendant advertised, marketed and distributed three products, each comprised of senna leaf and Chinese mallow, which Defendant calls "Dieter's Green Herbal Tea," "Ultra Slim Herbal Tea," and "Super Slimming Herbal Tea" (together, "Senna Diet Products" or "Products"), transacting business in this district and throughout the United States.

6.      Defendant advertised, marketed and distributed the Senna Diet Products in several package sizes, iterations and variations to consumers throughout this district, the state of California and the United States.

7.      At all times relevant to this matter, Plaintiff Eunice Johnson resided, and continues to reside, in Turlock, California.

8.      Members of the putative Class reside in California, and other states in the United States.

9.      During the Class period, Plaintiff Eunice Johnson was exposed to and saw Defendant's claims about Dieter's Green tea (the "Product") on the Product's packaging, which claimed, *inter alia*, that the Product was effective for weight-loss.   Plaintiff purchased the Product in reliance on those packaging claims at either a Price Chopper or Hen House store in the Kansas City, Missouri area, around November of 2012 for approximately $3.00, and suffered injury in fact as a result of Defendant's unfair competition as described herein.

10.     Plaintiff are informed and believe and thereon allege that at all times herein mentioned the Defendant and Defendant's employees were the agents, servants and employees of the Defendant, acting within the purpose and scope of that agency and employment.

## INTRODUCTORY FACTS

11.     This is a consumer protection class action lawsuit on behalf of purchasers of Triple Leaf brand products marketed by Defendant as "Dieter's Green Herbal Tea," "Ultra Slim Herbal Tea," and "Super Slimming Herbal Tea" (together, "Senna Diet Products" or

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

"Products").

12.    For over ten years, the Senna Diet Products have been and continue to be marketed by the Defendant, Triple Leaf, as weight loss "teas," which are claimed to be "Herbal Dietary Supplement[s]" that "Offer Traditional Herbal Support While Dieting." *See* Exhibits 1 and 2.

13.    For over ten years, the Senna Diet Products have been and continue to be marketed by Defendant as a means of losing and managing weight.

14.    The predominant ingredient in Triple Leaf's Senna Diet Products, however, is senna leaf, a source of the dangerous laxative senna.  Senna is the generic descriptor of a heterogenous mixture comprised of highly variable amounts of chemical irritants such as anthraquinone glycosides, free anthraquinones and di-anthrone glycosides ("sennosides" designated A, B, C, and D).[1]  Among these constituents, sennosides A and B are responsible for more than 80% of the biological activity of senna leaf[2], functioning as "stimulant laxatives" by irritating the intestinal lining.

15.    Senna is described in the United States Pharmacopeia ("USP") as a crude drug used as laxative and cathartic for the treatment of constipation and for bowel evacuation.[3]

16.    But Senna can actually thwart weight loss by slowing the metabolism and causing chronic bloating and constipation.  Also, senna may cause abdominal cramps, nausea, fainting, breathing difficulties, fluctuations in body temperature, diarrhea, and even organ failure.[4]

---

[1] V.E. TYLER *et al.,* PHARMACOGNOSY, 65 (Lea and Febiger, 9th ed., 1988).

[2] A. Stoll & B. Becker, *Sennoside A and B, the Active Principles of Senna,* 7 Fortschritte der Chemie Organischer Naturstoffe 248 – 269 (1950).

[3] UNITED STATES PHARMACOPEIA 1516-17 (United States Pharmacopeial Convention, 24th ed., 2000).

[4] B. Vanderperren *et al.*, *Acute Liver Failure with Renal Impairment Related to the Abuse of Senna Anthraquinone Glycosides,* 39(7-8) Ann. Pharmacotherapy, 1353-57 (2005).

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

17.     Because the Senna Diet Products contain no weight loss ingredients or fat burners, it is are not an effective treatment for weight loss or appetite suppression and does not in fact work as advertised.  Moreover, Senna does not prevent absorptions of calories from food, as it acts to stimulate the large intestine and not the small intestine where nutrient absorption takes place.   Accordingly, Senna only effectuates loss of fecal matter and water from the lower bowels, resulting only in dehydration, loss of vital electrolytes and, at times, painful cramping.

18.      The Senna Diet Products are each labeled as a "Herbal Dietary Supplement" (*see* Exhibits 1 and 2)**.**  Pursuant to the Dietary Supplement Health and Education Act of 1994 ("DSHEA"), dietary supplements are "foods" for the purposes of the Food, Drug, and Cosmetic Act ("FDCA"). 21 U.S.C. § 321(ff).  Accordingly, the Senna Diet Products are unlawful misbranded foods where Defendant's product labeling falsely and misleadingly recites that they are effective in managing weight.   21 U.S.C. § 343(a).

19.     Defendant Triple Leaf conceals from consumers the dangers of consuming its Senna Diet Products.

20.     Defendant primarily advertises and promotes the Senna Diet Products through labeling claims on the Products' package.  Label descriptions on the Products' packaging, taken as a whole, clearly indicate what the Products are supposed to do and all members of the class were exposed to the Products' labels as depicted herein because Defendant's labeling is and was uniform throughout the U.S.

21.     Like other members of the class, Plaintiff saw, understood, and relied on the "Dieter's Green Tea" Product's label, including but not limited to: the false or misleading claims on packages stating that it was a "Dieter's" tea, offered "Support While Dieting," and was derived from "time-tested knowledge" possessed by Defendant. (*See* Exhibits 1, 2 and 4.)

22.     Each of these statements is false and/or misleading because the Product does not provide the advertised benefits but is, in fact, a laxative.

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

23.     Plaintiff and the class would not have purchased the Products, but for the Products' deceptive labeling claims.

24.     Defendant's marketing and promotion of the Products is supported by false and misleading claims containing material omissions concerning the Products' efficacy and supposed mechanism of action. Defendant had a duty to disclose the truth behind the Products' supposed efficacy and mechanism of action, to correct the deception its partial disclosure created in minds of consumers.

25.     When purchasing the Products, Plaintiff was seeking a product that would help her lose weight and support her diet efforts, as Defendant promised, represented and warranted. Moreover, Plaintiff sought a product that was generally healthy, as the Products' advertising promises a natural means to help lose weight.

26.     Plaintiff purchased the Product believing it had the qualities she sought, based on the Product's deceptive labeling, but the Product was actually unacceptable to her as it is, in fact, a laxative and not a weight loss aid.

27.     Moreover, like all reasonable consumers and members of the class, Plaintiff considers a label's compliance with federal law a material factor in their purchasing decisions. Plaintiff is generally aware that the federal government carefully regulates packaged food products and diet supplements and therefore has come to trust that information conveyed on these type of products' labels is truthful, accurate, complete, and fully in accordance and compliance with the law. As a result, Plaintiff trusts she can compare competing products on the basis of their labeling claims, to make a purchasing decision.

28.     Like all reasonable consumers and members of the class, Plaintiff would not purchase a product she knew was misbranded under federal law, *see* 21 U.S.C. § 343, which the federal government prohibits selling, *id.* § 331, and which carries with its sale criminal penalties, *id.* § 333. Plaintiff could not trust that the label of a product misbranded under the law is truthful, accurate and complete.

29.     Similarly, like all reasonable consumers and members of the class, Plaintiff

would not purchase a product she knew was an illegally marketed new drug for which the FDA has not determined its safety and efficacy.

30.     In light of the foregoing, reasonable consumers, including Plaintiff and other members of the class, were and are likely to be deceived by Defendant's advertising and marketing practices as detailed herein.

31.     Further, Plaintiff and the Class purchased the Product instead of competing products based on the false statements and misrepresentations described herein.

32.     Instead of receiving a product that had the weight loss and diet support advantages advertised, Plaintiff and the Class received a product worth much less, or which was worthless, since the Product not only did not work but causes effects opposite to those advertised.

33.     Plaintiff and the Class lost money as a result of Defendant's deception in that Plaintiff did not receive what she had paid for.

34.     Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Products.

35.     Plaintiff bring this action on behalf of herself and all other similarly situated consumers in the United States or, in the alternative, California and states with laws that do not materially differ from California, to halt the dissemination of Defendant's deceptive and false advertising message about the Products, to correct the false and misleading perception it has created in the minds of consumers, and to compensate the Class members wronged by the Defendant's conduct.  Plaintiff alleges violations of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*, "CLRA"), Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), breach of express warranty, and breach of implied warranty.

## SPECIFIC FACTUAL ALLEGATIONS

36.     Defendant Triple Leaf has used and continues to use labeling, advertising, and the Internet, to market Dieter's Green Herbal Tea, Ultra Slim Herbal Tea and Super Slimming Herbal Tea ("Senna Diet Products" or "Products"), which Defendant claims, *inter*

*alia,* are "Chinese Medicinals," which support or assist in dieting and weight loss and are derived from "time-tested knowledge" held by Defendant.

### The Senna Diet Products' Retail Sales Locations

37.     The Senna Diet Products are sold at a variety of retail locations in California and across the United States, including Vons markets and the Vitamin Shoppe.

38.     In addition, Defendant sells the Senna Diet Products online on a variety of third-party websites, such as amazon.com, vitaminshoppe.com and vitacost.com.

### The Composition of the Senna Diet Products

39.     The Senna Diet Products, which Defendant purports to be "Herbal Dietary Supplements," consist of "proprietary herbal blends" of botanicals packed into tea bags. The predominant ingredient of each of the Products' proprietary blends is a crude senna leaf preparation that contains highly variable amounts of sennosides that act as strong stimulant laxatives when consumed after brewing a tea by steeping the product in hot water.

40.     Each of the Products also contains a second laxative, Chinese mallow, referred to by Defendant as "Whorled mallow leaf."  (*See* Exhibit 3.)

### *Senna is Ineffective for Weight Loss Because it is Active in the Colon and Not in the Small Intestine*

41.     Senna has a laxative effect, but is not a bulk-forming laxative.  Bulk-forming laxatives are generally considered safe for regular use.  *See* J. Tack *et al., "Diagnosis and Treatment of Chronic Constipation – a European Perspective,"* 23(8) Neurogastroenterol Motil_____ 697-710 (August 2011), *available at* http://onlinelibrary. wiley.com/doi/10.1111/j.1365-2982.2011.01709.x/full (accessed March 4, 2014).

42.     Senna is a stimulant laxative that stimulates contractions in muscles of the colon to increase bowel movements. G. Staumon, *et al., "Sennosides and Human Colonic Motility,"* 36(Suppl 1) Pharmacology 49-56 (1988), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/3285363 (accessed March 3, 2014).  Sennosides A and B are themselves inactive until broken down into smaller molecules called anthrones by means of bacterially-derived enzymes present only in the large intestine (colon).  P. De

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

Witte   P & L.   Lemli,   *"The   Metabolism   of   Anthranoid   Laxatives,"* 37 Hepatogastroenterol. 601-605      (1990),   *abstract   available   at* http://www.ncbi.nlm.nih.gov/pubmed/2289777 (accessed March 6, 2014).

43.      Because of their molecular structure, sennosides A and B are protected against hydrolysis by stomach acid as well as breakdown by the enzymes present in the small intestine. J. Lemli, *"Metabolism of Sennosides—an Overview,"* 36(Suppl. 1) Pharmacol.      126-128 (1988),   *abstract   available   at* http://www.ncbi.nlm.nih.gov/pubmed/3368510 (accessed March 5, 2014.)    Senna is thus pharmacologically inactive until it reaches the colon, where it stimulates contractions, causing soft stools and diarrhea.    J. Fioramonti, *et al., "Effect of Sennosides on Colon Motility in Dogs,"* 36 (Suppl.1) Pharmacol. 23-30 (1988), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/3285361 (accessed March 3, 2014) (Senna given before meals caused strong coordinated intestinal contractions localized within the colon.).

44.      The vast majority of nutrients are absorbed in the small intestine by means of intestinal villi.  The colon, on the other hand, lacks villi, therefore little or no nutrient absorption occurs there.   As such, real weight-loss cannot occur from Senna because Senna acts to stimulate evacuation of the colon (large intestine) and not the small intestine, thus permitting absorption of calories from food to continue unabated.

### *The Dangers of Senna*

45.      **Toxicity.** Senna contains components that are highly toxic.  P. Hietala *et al.*, "Laxative Potency and Acute Toxicity of Some Anthroquinone Derivatives, Senna Extracts and Fractions of Senna Extracts," 61 Pharmacol. Toxicol. 153-156 (1987), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/3671329 (accessed March 6, 2014).

46.      **Hepatitis.** Long-term use of Senna may lead to hepatitis.   U. Beuers *et al., "Hepatitis After Chronic Abuse of Senna,"* 337 Lancet 372-373 (1991).

47.      **Liver failure.** Excessive use of Senna can cause liver failure.  Vandeperren *et al., "Acute Liver Failure with Renal Impairment Related to the Abuse of Senna Antraquinone Glycosides,"* 39 Ann. Pharmacother. 1353-1357 (2005), *abstract available at*

http://www.ncbi.nlm.nih.gov/pubmed/15956233 (accessed March 4, 2014).

48. **Arthritis and finger "clubbing."** When anorexics use Senna habitually, they may develop enlarged ("clubbed") fingertips and arthritis, in addition to the other dangerous side effects of Senna. A.K. Lim *et al.,* "Anorexia Nervosa and Senna Misuse: Nephrocalcinosis, Digital Clubbing and Hypertrophic Osteoarthropathy," 188 Med. J. Australia 121-122 (2008).

49. **Cancer.** Senna may cause cancer. B.A. van Gorkom *et al., "Review article: Anthranoid Laxatives and Their Potential Carcinogenic Effects,"* 13 Alimentary Pharmacol. & Therapeutics 443-452 (1999), *available at* http://onlinelibrary.wiley.com/doi/10.1046/j.1365-2036.1999.00468.x/full (accessed March 6, 2014).

50. **Laxative Dependency.** Long term chronic use (defined as three or more times a week for one year or more) of stimulant laxatives such as Senna can result in damage to the nerves that control normal function of the colon (large intestine); stimulant laxatives can cause dependence, with a "vicious cycle" of increased use, if the intestinal muscles "forget" how to work on their own. *See* J. Joo, *et al., "Alterations in Colonic Anatomy Induced by Chronic Stimulant Laxatives: The Cathartic Colon Revisited,"* 6(4) J. Clin. Gastroenterol. 283-286 (June 1998), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/9649012; *see also* Fioramonti, *supra* (Morphological changes in canine colons post-senna administration are consistent with nerve damage.).

51. Accordingly, the dangers of Senna are numerous, significant and well-documented in peer-reviewed scientific literature.

<u>**Specific Misrepresentations and Deceptive Acts**</u>

52. Defendant is fully aware that its Senna Diet Products cause diarrhea; nevertheless they tout it as means of detoxification of the human body, along with other false and misleading claims.

**a. Product Names**

53. Defendant Triple Leaf chose deceptive names for each of its Senna Diet

9

Products, which are prominently displayed on the front labels of the Products (*see* Exhibits 1 and 2) and elsewhere on the Products' retail packaging:

a. <u>Dieter's Green.</u> This name misleads consumers to believe this product has ingredients to help one diet or lose weight because it explicitly states that it is a "Dieter's" product.

b. <u>Ultra Slim</u>. This name misleads consumers to believe this product has ingredients to help one diet or lose weight as it is formed from the word "Ultra," implying superlative power plus the word "Slim," which expresses the body type desired by dieters. Accordingly, this product name falsely implies that it is highly effective for use by persons desiring to lose weight and become "Slim," whereas in fact Ultra Slim is ineffective for achieving actual weight reduction.

c. <u>Super Slimming</u>. This name misleads consumers to believe this product has ingredients to help one diet or lose weight as it is formed from the word "Super," implying superlative power plus the word "Slimming," which expresses the effect desired by dieters. Accordingly, this product name falsely implies that it is highly effective for use by persons desiring to lose weight by means of "Slimming," whereas in fact Super Slimming is ineffective for achieving actual weight reduction.

54.     Further, the Senna Diet Products falsely and deceptively imply they are useful for dieting but most diets last substantially longer than the limited time period beyond which Senna use becomes increasingly dangerous, as set forth herein.

**b. Front Labels (Vertical and Horizontal)**

55.     Defendant Triple Leaf manufactures its retail package with two different panels of the Products' boxes serving for vertical[5] or horizontal[6] display on store shelves. (*See* Exhibits 1 and 2.) These front labels carry false and deceptive statements common to all of Defendant's Senna Diet Products, which are exposed to consumers inspecting the Senna Diet Products on the shelves of retail stores.

---

[5] *I.e.,* "portrait" mode.

[6] *I.e.,* "landscape" mode.

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

56.     Misleading Slogan.  Defendant Triple Leaf places on the front labels of the Products, bolded print clearly advertising that each of the Products provides "Herbal Support While Dieting."   However, all three of the Products contains Senna as the predominant ingredient of Defendant's "proprietary blend of herbs" (see Exhibit 3), which is not effective in weight loss and may have an opposite effect and cause bloating and cramping.  Further, this claim is also false and deceptive in that most diets last substantially longer than the limited time period beyond which Senna use becomes increasingly dangerous.  Far from being supportive, the Products cause severe side effects including laxative dependency when used long-term.

57.     Misleading Description. Defendant prominently displays on its front labels that the Products "Helps Promote Cleansing . . ."[7]   This description is misleading in that it makes the Product seem as though it has ingredients that will help to flush the body of toxins, when in reality it is predominantly comprised of two laxative ingredients.  Toxins can still be taken up in the body through the stomach.

### c. Bottom Labels

58.     Defendant manufactures its retail package with a bottom panel that is exposed to consumers inspecting the Senna Diet Products on the shelves of retail stores. These bottom labels carry false and deceptive statements common to all of Defendant's Senna Diet Products. (See Exhibit 4.)

59.     Misleading Statement.  On the bottom labels of the Products, Defendant advertises that "[t]he Chinese system of herbology has been recorded in ancient texts which are studied and employed even today."  This statement is misleading to consumers because even if Senna and Chinese Mallow are described in "ancient texts," their combination was not described for the purposes Defendant is selling the Products, which is to help people on diets achieve actual weight loss.  It is further a false or misleading establishment claim but

---

[7] On Dieter's Green, Defendant advertises "Helps Promote Cleansing"; on Ultra Slim, Defendant advertises "Helps Promote Cleansing and Digestion"; on Super Slimming, Defendant advertises "Helps Promote Cleansing and Detoxification."  See Exs. 1 & 2.

there is no evidence that senna is scientifically established to achieve or support weight loss, and in fact, repeated use of laxatives is contraindicated for weight loss.

### d. Other Misrepresentation and Material Omissions

60.    **Concealment of the dangers of senna.**  The dangers of Senna ingestion are well-documented as set forth above.

61.    The American Herbal Products Association (AHPA) warns against long-term use of senna leaf,[8] as does the FDA.[9]

62.    The State of California has established labeling requirements that supersede the AHPA requirement for products sold in California.  All dietary supplements that contain stimulant laxatives, including senna leaf as in Defendant's Products, are required to bear the following label: "NOTICE: This product contains Senna.  Read and follow directions carefully. Do not use if you have or develop diarrhea, loose stools, or abdominal pain because Senna may worsen these conditions and be harmful to your health.  Consult your physician if you have frequent diarrhea or if you are pregnant, nursing, take medication, or have a medical condition." ("Senna Notice.")  Title 17, Cal. Code of Regs. §§ 10200 and 10750;  *see also* 21 C.F.R. § 310.545(a)(8); 58 Fed. Reg. 27636, 27640-27641.

63.    While the end panel of the Product bears the required Senna Notice in small type (*see* Exhibit 3), the front and sides of the packaging make advertising claims that directly contradict that disclaimer along with the known properties and dangers of repeated or ongoing use of Senna.    Accordingly, Defendant's advertising claims are false and misleading in that they conceal the dangers of Senna use.

---

[8] AHPA recommends that senna leaf products be labeled, "Do not use this product if you have abdominal pain or diarrhea.  Consult a healthcare provider prior to use if you are pregnant or nursing.  Discontinue use in the event of diarrhea or watery stools.  Do not exceed recommended dose.  Not for long-term use." *See* http://www.ahpa.org/Default.aspx?tabid=224#section_stimulant_laxativ. (Viewed October 8, 2013.)

[9] P. Kurtzweil, "Dieter's Brews Make Tea Time a Dangerous Affair," *FDA Consumer*, July-August 1997, pp. 6-11.

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

64.     **Concealment of the dangers of Chinese mallow**.   Chinese mallow (*Malva verticillata*), another crude botanical with strong laxative effects, is also a major components of the Products' "proprietary herbal blend." (*See* Exhibit 3.)   One of Chinese mallow's major bio-active components is mucilage, which probably functions as a lubricating laxative.[10]

65.     In addition to its laxative properties, Chinese mallow is also a diuretic.[11]   Use of diuretics without dietary potassium supplements can lead to hypokalemia (low serum potassium), which may cause heart palpitations, fatigue and muscle spasms.[12]

66.     In addition to mucilage, Chinese mallow seeds also contain polysaccharides and flavonoids.[13]   Some studies indicate anti-complementary activity is present in polysaccharides isolated from Chinese mallow.[14]   Suppression of complement may reduce inflammation but may also suppress immune responses, in particular anti-viral immunity.[15] Thus consumption of Chinese mallow could make consumers more vulnerable to influenza and other serious viral health threats.

67.     Additionally, Chinese mallow consumption can cause significant drops in serum blood sugar levels.   While this property has led some researchers to propose

---

[10] *See* Committee on Herbal Medicine Products, ASSESSMENT REPORT ON LINUM USITATISSIMUM L., SEMEN, European Medicines Agency, London (October 25, 2006) (a muscilagenous preparation of dried ripe linseeds exhibited lubricant laxative activity and also increased volume of stool); *available at* http://www.ema.europa.eu/docs/en_GB/document_library/Herbal_-_HMPC_assessment_report/2010/01/WC500059156.pdf. (Retrieved January 11, 2014).

[11] T. Tsarong, TIBETAN MEDICINAL PLANTS, Tibetan Medical Publications, West Bengal (1994).

[12] *See* http://www.nlm.nih.gov/medlineplus/ency/article/000479.htm.   (Viewed January 30, 2014).

[13] Natural Products Research Institute, Seoul National University, MEDICINAL PLANTS IN THE REPUBLIC OF KOREA,World Health Organization, Manila (1998).

[14] M. Tomoda, *et al., Constituents of the Seed of Malva Verticillata. VIII. Smith Degradation of MVS-VI, the Major Acidic Polysaccharide, and Anti-Complementary Activity of Products,* 40(8) Chem. Pharm. Bull. (Tokyo) 2219-21 (1992).

[15] "Complement is one of the first lines of host defence to be faced and countered by viruses as they struggle to establish an infection." P. Lachmann & A. Davies, *Complement and Immunity to Viruses*, 159 Immunol. Rev. 69-77 (October 1997).

13

compounds from Chinese mallow as an anti-diabetic treatment,[16] it makes Chinese mallow hazardous to the health of consumers who are already taking conventional diabetes medications. In these patients, Chinese mallow can lead to dangerous drops in blood sugar (hypoglycemia).[17]

68.     Accordingly, Defendant's advertising of the Products misleads consumers where it does not warn them against the dangers of Chinese mallow in that the consumption of teas made from crude preparations of Chinese mallow cannot be considered safe for consumers.

### *Defendant's Constructive and Actual Knowledge*

69.     Notwithstanding Defendant' false and deceptive weight-loss claims, FDA has approved Senna for use as a "digestive aid" only. See 21 C.F.R. § 310.545 (8)(ii); see also 63 Fed. Reg. 33592 (June 19, 1998) (grouping Senna with other stimulant laxatives). Accordingly, Defendant is charged with constructive knowledge that the only proper claims for Senna-containing products are as laxatives. Moreover, Defendant has demonstrated actual knowledge that Senna is properly claimed as a laxative by Defendant's marketing of its "Herbal Laxative" product (see Exhibit 5) which also contains the same active ingredient, Senna, as contained in Defendant's Senna Diet Products.

### *Exceptions to Statutes of Limitations*

70.     **Fraudulent concealment.** At all relevant times, and as far back as 1998, Defendant was both constructively and actually aware that Senna was approved by the FDA for use as a "digestive aid" and as a laxative, and not for weight loss. *See* 21 C.F.R. § 310.545(8)(ii); *see also* 63 Fed. Reg. 33592 (June 19, 1998). Therefore, at all relevant times Defendant had a duty to inform consumers that the Senna Diet Products were

---

[16]Y. Jeong & C. Song, *Antidiabetic Activities of Extract from Malva Verticillata Seed Via the Activation of AMP-Activated Protein Kinase,* 21(9) J. Microbiol. Biotechnol. 921-29 (2011).

[17] *See* http://www.webmd.com/vitamins-supplements/ingredientmono-1150-CHINESE%20MALLOW.aspx. (Viewed January 15, 2014.)

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

laxatives and were ineffective and not approved for weight loss, but Defendant knowingly concealed that fact from members of the putative class herein.  Accordingly, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

71.     **Delayed discovery.**  Additionally, or in the alternative, because the Senna Diet Products recited Defendant's false and misleading claims, members of the class could not discover, nor had reason to discovery that the Senna Diet Products were ineffective and not approved for weight loss, and the delayed discovery exception postpones accrual of the limitations period for all members of the putative class.

72.     **Continuing violation.**  Additionally, or in the alternative, because Defendant's misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statutes of limitations for all members of the putative class until Defendant's unlawful advertising and labeling is corrected.

### ***Sherman Law Allegations***

73.     Sherman Food, Drug, and Cosmetic Law ("Sherman Law," located at Cal. Health & Safety Code §§ 109875-111915).  The Sherman Law is explicitly authorized by the federal Food, Drug, and Cosmetic Act ("FDCA").  21 U.S.C. § 343-1.

74.     The Sherman Law imposes identical requirements to the federal FDCA, including the FDCA's food labeling requirements. See Cal. Health & Safety Code § 110100.

75.     Under the FDCA and the Sherman Law, dietary supplements such as the Senna Diet Products are classified as "foods."  21 U.S.C. § 321(ff).  A food shall be deemed to be misbranded if its labeling is false or misleading in any particular.  21 U.S.C. § 343(a); Cal. Health & Safety Code § 110660.

76.     A dietary supplement is a product that contains a dietary ingredient, such as a vitamin, mineral or herb, which is intended to supplement the diet.   21 U.S.C. § 324(ff)(1)(C).  Diet supplements, however, are also misbranded if their labeling is false or misleading in any particular.

77.     Language uniformly present on the Products claims that each of the Products

"provides herbal support while dieting."   See Exhibits 1 & 2.   The most prominent structure/function claims on Defendant's packaging are inherent in the names of the Senna Diet Products themselves:   Dieter's Green, Ultra Slim and Super Slimming, in and of themselves and taken together with the "herbal support while dieting" claim all constitute claims that the Senna Diet Products are effective for weight loss or long-term sustained weight loss, i.e., claims that the Products alter the structure or function of the human body.

78.   Notwithstanding Defendant's claims, Senna does not effectuate actual weight loss, for the reasons set forth elsewhere herein, i.e., because it effectuates evacuation of the lower bowel only, without interfering with nutrient (and calorie) absorption that occurs exclusively in the small intestine.   Thus any weight lost by the user is temporary and attributable to loss of fecal material due to loose stools caused by Senna and loss of fluids caused by Senna's diuretic effects.

79.   Accordingly, the weight-loss structure/function claims recited on the packaging of the Senna Diet Products are false and misleading, and the Products are unlawful misbranded foods and diet supplements as set forth above.   21 U.S.C. § 321(ff); 21 U.S.C. § 343(a); Cal. Health & Safety Code § 110660.

80.   The Products' packages all recite claims of "Support While Dieting" and prominently display product names (Dieter's Green, Ultra Slim and Super Slimming) that constitute claims that the Products are effective for weight management.   These claims are false and misleading as set forth herein.

81.   These false and misleading claims make the Products, and each of them, misbranded foods under the FDCA, which are accordingly unlawful under the California Sherman Law.   *Id.*; Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111.

## Reliance and Injury

82.   Defendant's marketing and promotion of Dieter's Green Herbal Tea, Ultra Slim Herbal Tea, and Super Slimming Herbal Tea ("Senna Diet Products" or "Products") was supported by false and misleading claims containing material omissions and misrepresentations.

83.     When purchasing the Products, Plaintiff and the class were seeking products that would provide the benefits, and possessed the efficacy and characteristics, as Defendant marketed, promised, represented and warranted.

84.     Plaintiff read and relied on the following deceptive claims by Defendant concerning the Products:

- "Dieter's Green Tea"

- "Herbal Support While Dieting"

- "The Chinese system of herbology has been recorded in ancient texts which are studied and employed even today."

- "time-tested knowledge . . . passed down from generation to generation over the centuries."

85.     Each of these statements is false and/or misleading for the reasons set forth herein and Defendant's marketing and promotion is misleading, false, and contains material omissions concerning the Product's efficacy and supposed mechanism of action.

86.     Plaintiff and the class purchased the Products believing they had the qualities they sought, based on the Products' deceptive labeling and marketing, but the Products were actually unacceptable to them as they did not possess the benefits, efficacy, and characteristics advertised.

87.     In purchasing the Products, Plaintiff and members of the putative class reasonably relied upon the various representations Defendant made on the Products' packaging and its prevalent advertising campaign, including online advertising, as described herein.

88.     At all times relevant herein, Defendant had a duty to disclose additional and/or complete, accurate information to purchasing consumers, to correct all misunderstandings its omissions and misrepresentations created in the minds of those consumers.

89.     Absent the misrepresentations and omissions described herein, which were and are material to the average consumer, Plaintiff and class members would not have

purchased the Products.

90.     When purchasing the Products, Plaintiff and Class members were seeking products that would provide the benefits and had the endorsements, proof of efficacy, and characteristics that Defendant marketed, promised, represented and warranted.

91.     Plaintiff and Class members purchased the Products believing they had the qualities represented on the Products' labeling, but the Products were actually unacceptable to them, as they did not possess the benefits, endorsements, proof, and characteristics as advertised.

92.     Moreover, like all reasonable consumers and members of the Class, Plaintiff consider a label's compliance with federal law a material factor in their purchasing decisions.  Plaintiff is generally aware the federal government carefully regulates OTC products and therefore have come to trust that information conveyed on packaged OTC product labels is truthful, accurate, complete, and fully in accordance and compliance with the law.  As a result, Plaintiff trusts she can compare competing products on the basis of their labeling claims, to make a purchasing decision.

93.     Like all reasonable consumers and members of the Class, Plaintiff would not purchase an OTC product she knew was misbranded under federal law (21 U.S.C. § 352) which the federal government prohibits selling (§ 331), and which carries with its sale criminal penalties (§ 333).  *See also* Cal. Health & Safety Code §§ 110100, 110105, 110110, 110111.  Plaintiff could not trust that the label of a product misbranded under federal law is truthful, accurate and complete.  In fact, the Defendant was promoting the Products in violation of the FDCA, making the Products misbranded under California's Sherman Law.

94.     Similarly, like all reasonable consumers and Class members, Plaintiff would not purchase an OTC product they knew was an illegally marketed new drug for which the FDA has not determined its safety and efficacy.

95.     In light of the foregoing, reasonable consumers, including Plaintiff and other Class members, were and are likely to be deceived by Defendant's advertising and

marketing practices as detailed herein.

96.     Plaintiff and the Class will be exposed to the Products' false, deceptive, and unlawful labeling claims in the future when they visit a retail store for weight management products unless Defendant agrees, or is enjoined, to change the Products' labeling in response to Plaintiff's claims as set forth herein and in Plaintiff's notice letters.

97.     Plaintiff and other Class members purchased the Products instead of competing products based on the false statements, misrepresentations and omissions described herein.

98.     Instead of receiving a product that had the benefits, advantages, endorsements, proof, and characteristics as advertised, Plaintiff and other Class members received a product worth much less, or which was worthless, since the Products do not work; causes no effect or effects reverse of that advertised; and did not possess the characteristics, benefits, endorsements, and proof of efficacy, as advertised by Defendant.

99.     At all times relevant herein, Defendant had a duty to disclose additional information to purchasing consumers, to correct all misunderstandings their omissions and misrepresentations created in the minds of those consumers.

100.    Absent the misrepresentations and omission described herein, which were and are material to an average consumer, Plaintiff and other consumers would not have paid what they did for the Products.

101.    Plaintiff and the Class lost money as a result of Defendant's deception in that Plaintiff and the Class did not receive what they had paid for.

102.    Plaintiff and the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Products over the class period.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class") in accordance with Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant:

All persons who purchased, on or after April 4, 2010 Defendant's Senna Products (in

all packaging sizes and iterations) in the United States for personal or household use. Excluded from the Class are Defendant, its employees, parents, subsidiaries, affiliates, officers and directors, and those who purchased the Products for the purpose of resale.

*Or, in the alternative,*

All persons who purchased, on or after April 4, 2010 Defendant's Senna Products (in all packaging sizes and iterations) in California and states with laws similar to California, for personal or household use. Excluded from the Class are Defendant, its employees, parents, subsidiaries, affiliates, officers and directors, and those who purchased the Products for the purpose of resale.

104. The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the tens of thousands of persons in the State of California and in the hundreds of thousands of persons in the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation, discovery or Class definition. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

105. Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to their Products appropriate with respect to the Class as a whole. Retrospective injunctive relief would seek a recall of the Products' false, deceptive and unlawful labeling and benefit the Class equally and as a whole. Prospective injunctive relief would ensure that Class members are only exposed to lawful, truthful and non-misleading advertising of the Products in the future, which will also benefit each member of the Class in equal but indivisible measure. In particular, Defendant has misrepresented or failed to disclose the true nature of the Products being marketed and distributed, as detailed herein, through misrepresentations and omissions on the labeling, by which Defendant acted and refused to act on grounds generally applicable to the Class as a whole.

106.     There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following:

107.     Questions of law and fact common to Plaintiff and the Class include:

a. Whether Defendant contributed to, committed, and/or are responsible for the conduct alleged herein;

b. Whether Defendant's conduct constitutes the violations of law alleged herein;

c. Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

d. Whether Class members are entitled to compensatory, injunctive, and other equitable relief.

108.     By purchasing Defendant's Products, all Class members were subjected to the same wrongful conduct.

109.     Absent Defendant's deceptive claims, Plaintiff and Class members would not have purchased Defendant's Products.

110.     Plaintiff's claims are typical of the Class's claims.  Plaintiff will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

111.     The Class is sufficiently numerous, as it includes thousands of individuals who purchased Defendant's Products throughout the United States during the Class Period.

112.     Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

113.     Defendant has acted on grounds applicable to the Class, thereby making appropriate final injunctive relief or declaratory relief concerning the Class as a whole.

114.     Questions of law and fact common to the Class predominate over any

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1  questions affecting only individual members.

2      115.    Class treatment is appropriate under FRCP 23(a), and both 23(b)(2) and

3  23(b)(3). Plaintiff do not contemplate class notice if the Class is certified under FRCP

4  23(b)(2), which does not require notice.  Plaintiff contemplates notice via publication if the

5  Class is certified under FRCP 23(b)(3) or if the Court determines Class notice is required

6  notwithstanding that notice is not required under FRCP 23(b)(2).  Plaintiff will, if notice is

7  required, confer with Defendant and seek to present the Court with a stipulation and

8  proposed order on the details of a Class notice plan.

9                                **CAUSES OF ACTION**

10                           **FIRST CAUSE OF ACTION**

11                  **For Violations of the Consumers Legal Remedies Act**

12                            **Civil Code §§ 17500, et seq.**

13            **[On Behalf of Plaintiff and the Class and Against the Defendant]**

14      116.    Plaintiff repeat, re-allege and incorporate by reference each and every

15  allegation contained above as if fully set forth herein.

16      117.    At all times relevant herein, there was in full force and effect the Consumers

17  Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "Consumers Legal

18  Remedies Act") and similar deceptive practice acts in other states.  Plaintiff are consumers

19  as defined by Civil Code § 1761(d).  The Products are goods within the meaning of Civil

20  Code § 1761(a).

21      118.    Defendant violated and continues to violate the Consumers Legal Remedies

22  Act by engaging in the following practices proscribed by § 1770(a), in transactions with

23  Plaintiff and the Class which were intended to result in, and did result in, the sale of the

24  Products:

25          (a) Advertising that the Products are effective for weight loss when they are not;

26          (b) Representing that the Products have characteristics, uses or benefits which they do

27  not have;

28          (c) Representing that the Products are of a particular standard, quality or grade when

22

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

they are of another;

(d) Advertising the Products with intent not to sell them as advertised;

(e) Representing that the Products have been supplied in accordance with a previous representation when they are not;

(f) Engaging in conduct that creates a likelihood of confusion or misunderstanding.

119.    The Defendant's representations amount to false and/or deceptive acts or practices in violation of the Consumers Legal Remedies Act.

120.    Defendant's actions described herein similarly violated the consumer protection statutes in effect in every state in which Defendant or their affiliates do business.

121.    Defendant violated the Consumers Legal Remedies Act, and similar provisions in the Consumers Legal Remedies Acts of other jurisdictions within the United States, by making the representations, claims and nondisclosures for the Products, as described herein, when it knew, or should have known, that the representations and advertisements were incomplete, false and misleading.

122.    Plaintiff and other members of the Class relied upon the Defendant's material misrepresentations as to the quality and attributes of the Products.

123.    Plaintiff and other members of the Class were likely to be deceived by Defendant's representations about the quality and attributes of the Products, including but not limited to the purported ability of the Senna Diet Products to cause weight loss.

124.    Plaintiff and other Class members would not have purchased the Products had they known Defendant's claims were misleading, unfounded or untrue, and the true nature of the Products, causing them injury in fact in the form of the lost purchase price for the Products.

125.    Pursuant to section 1782 *et seq.* of the Consumers Legal Remedies Act, Plaintiff Johnson notified Defendant in writing by certified mail of the particular violations of § 1770 of the Act as to the Product and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  Defendant's wrongful business practices regarding the Product constituted,

and constitute, a continuing course of conduct in violation of the Consumers Legal Remedies Act since Defendant is still representing that the Product have characteristics, uses, benefits, and abilities which are false and misleading, and have injured and continue to injure Plaintiff and the Class. A copy of Plaintiff's letter is attached as Exhibit 6 hereto.

126. Pursuant to California Civil Code § 1780(a), Plaintiff and the Class seek an order of this Court enjoining the Defendant from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law; awarding Plaintiff and the Class restitution and disgorgement; and awarding Plaintiff and the Class damages and punitive damages, and attorney's fees and costs.

## SECOND CAUSE OF ACTION

### Violation of California Business & Professions
### Code Section 17200 et seq. (Unfair Competition Law)
### [On Behalf of Plaintiff and the Class and Against the Defendant]

127. Plaintiff repeat, re-allege and incorporate by reference each and every allegation contained above as if fully set forth herein.

128. Business & Professions Code Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendant has engaged in "unlawful" business acts or practices by, among other things, making misrepresentations and omissions of material facts, as set forth more fully above, and violating, among other statutes, Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code § 17500, *et seq*., Health & Safety Code § 109875, *et seq*., and the common law.

129. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the False Advertising Law, the Consumer Legal Remedies Act, and the Sherman Law. Defendant's deceptive statements with regards to their Products described herein violate 21 U.S.C. § 343(a), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in

any particular"; and Defendant's conduct is further "unlawful" because it violates the California Sherman Law, see Cal. Health & Safety Code § 109875-111915 (specifically, §§ 110095, 110100, 110105, 110110, 110111, 110115, 110422 *et seq.*, 110660 *et seq.*), which incorporates the identical provisions of the FDCA.

130.     Defendant's actions described herein similarly violated the consumer protection statutes and statutes prohibiting unfair, unlawful or deceptive business acts or practices in effect in every state in which Defendant or their affiliates do business, and the common law of those states.

131.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

132.     Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code Section 17200, *et seq.*, and similar statutory provisions in other jurisdictions within the United States, in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous because the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Plaintiff allege violations of consumer protection, unfair competition and truth in advertising laws resulting in harm to consumers.  Plaintiff assert violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

133.     Defendant's claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code Section 17200 as to "fraudulent" conduct, and similar provisions protecting consumers in other jurisdictions within the United States. Defendant's labeling, website and other advertisements, as described herein,

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

were false, deceptive, and/or likely to deceive a reasonable consumer because Defendant is marketing weight loss teas and tablets when, in reality, the Products have no weight loss properties, and/or have less weight loss properties than claimed, and/or because Defendant's omitted material information from the Products' advertising as described herein, such that if Plaintiff and members of the Class had known those material facts, they would not have purchased the Products.

134.    Plaintiff and the Class were exposed to Defendant's advertising as alleged herein.

135.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff suffered injury in fact as a result of Defendant's unfair conduct, in the form of the lost purchase price of the Product, which she purchased after being exposed to Defendant's advertising statements, as described herein.

136.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other members of the Class.  Plaintiff and the Class continue to be exposed to Defendant's false and/or misleading advertising every time they shop for dietary supplements and encounter Defendant's false or deceptive advertising on store shelves. Defendant's competitors will also continue to suffer from Defendant's unfair or deceptive business conduct if injunctive relief is not afforded.

137.    Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to injunctive relief against Defendant, as set forth in the Prayer for Relief.

138.    Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

139.    Plaintiff and the Class members are likely to be damaged by Defendant's deceptive trade practices, as Defendant continues to disseminate misleading advertising and engage in conduct that violates the UCL.  Thus, injunctive relief enjoining this deceptive

1    practice is proper.

2       140.     Plaintiff and the Class also seek an order for the disgorgement and restitution

3 of all monies from the sale of Defendant's Products, which were unjustly acquired through

4 acts of unlawful, unfair, and/or fraudulent competition.

5

6                         **THIRD CAUSE OF ACTION**

7            **Violations of California Business and Professions**

8       **Code Section 17500 et seq. (False Advertising Law)**

9     **[On Behalf of Plaintiff and the Class and Against the Defendant]**

10       141.     Plaintiff repeats, realleges and incorporates by reference each and every

allegation contained above as if fully set forth herein.

11

12       142.     Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact

13 as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this

action, Plaintiff purchased the Product in reliance upon Defendant's marketing claims.

14 Plaintiff used the Product as directed, but the Product did not work as advertised, nor

15 provide any of the promised benefits.

16       143.     Defendant's business practices as alleged herein constitute unfair, deceptive,

17 untrue, and misleading advertising pursuant to California Business and Professions Code

18 section 17500, *et seq.* because Defendant has advertised their Products in a manner that is

19 untrue and misleading, or that Defendant knew was untrue or misleading, or omitted

20 material information from their advertising which Defendant had a duty to disclose.

21       144.     Defendant's wrongful business practices have caused injury to Plaintiff and

22 the Class, in the form of the lost purchase price of the Products. Plaintiff and the Class

23 purchased the Products after being exposed to Defendant's false or deceptive advertising

24 claims, as described herein.

25       145.     Defendant's conduct caused and continues to cause substantial injury to

26 Plaintiff and the other members of the Class. Plaintiff and the Class continue to be exposed

27 to Defendant's false and/or misleading advertising every time they shop for dietary

28

1   supplements and encounter Defendant's false or deceptive advertising on store shelves.
2   Defendant's competitors will also continue to suffer from Defendant's unfair or deceptive
3   business conduct if injunctive relief is not afforded.

4       146.    Pursuant to section 17535 of the California Business and Professions Code,
5   Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to
6   engage in deceptive business practices, false advertising, and any other act prohibited by
7   law, including those set forth in this Complaint.

8       147.    Plaintiff and the Class also seek an order for the disgorgement and restitution
9   of all monies from the sale of Defendant's Products, which were unjustly acquired through
10  acts of unlawful, unfair, and/or fraudulent competition.

11                          **FOURTH CAUSE OF ACTION**
12                          **Breach of Express Warranty**
13      **[On Behalf of Plaintiff and the Class and Against the Defendant]**

14      148.    Plaintiff repeats, realleges and incorporates by reference each and every
15  allegation contained above as if fully set forth herein.

16      149.    On the Products' labels (*see* Exhibits 1 - 4), Defendant expressly warranted
17  that the Products were effective, proper, and safe for their intended use. Defendant made
18  affirmations of fact or promises, or description of goods, which were "part of the basis of
19  the bargain," in that Plaintiff and the Class purchased the Products in reasonable reliance on
20  the Products' labeling statements. Cal. Com. Code §2313(1); *see also Zwart v. Hewlett-*
21  *Packard Co*., 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions
22  can create warranties). Specifically, Defendant asserted the Product was a "Dieter's Green
23  Tea," "Ultra Slim Herbal Tea," and "Super Slimming Herbal Tea" each of which would
24  "Offer . . . Herbal Support While Dieting," which constituted express warranties.

25      150.    Defendant breached the express warranties with Plaintiff and the Class by not
26  selling the Products that provided the benefits described above, and that breach actually and
27  proximately caused injury in the form of the lost purchase price for the Products.

28      151.    As a result of Defendant's breach of their warranties, Plaintiff and the Class

have been damaged in the amount of the purchase price of the Products they purchased.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

### Cal. Com. Code §§ 2314(1), 2314(2)(f)

### [On Behalf of Plaintiff and the Class and Against the Defendant]

152.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

153.    Defendant, in its sale, marketing and promotion of its Products, and the acts and omissions as set forth herein, made representations to Plaintiff and the Class in the form of statements and representations on the Products' labels. *See* Exhibits 1 - 4.  Specifically, Defendant asserted the Product was a "Dieter's Green Tea," "Ultra Slim Herbal Tea," and "Super Slimming Herbal Tea" each of which would "Offer . . . Herbal Support While Dieting," which constituted express warranties.

154.    Plaintiff and the Class purchased the Products manufactured, advertised and sold by Defendant.

155.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

156.    However, Defendant breached that warranty implied in the sale of goods, in that the Products did not provide the purported benefits, as set forth in detail herein.

157.    As a result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

158.    Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, pray for a judgment against Defendant on each cause of action:

A. For an order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of class notice;

B. For an order awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

C. For an order awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D. For an order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products;

E. For an order awarding damages, and punitive damages, to Plaintiff and the Class against Defendant, as provided by statute or applicable law;

F. For an order awarding attorneys' fees and costs to Plaintiff;

G. For an order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED:  April 4, 2014

*/s/ Ronald A. Marron*
RONALD A. MARRON

**THE LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
SKYE RESENDES
ALEXIS M. WOOD
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

30

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT 1

Triple Leaf Senna Diet Products, Front Panels, Horizontal Orientation







*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

Triple Leaf Senna Diet Products, Front Panels, Vertical Orientation





*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1

**EXHIBIT 3**
Triple Leaf Senna Diet Products, Side Panels

2

3

| **Dieter's Green** | **Ultra Slim** |
|---|---|



4

5

6

7

8

9

10

11

12

13

14

| **Super Slimming** |
|---|



15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

# EXHIBIT 4

Triple Leaf Senna Diet Products, Bottom Panels

| Dieter's Green |
|---|
|  |
| **Ultra Slim** |
|  |
| **Super Slimming** |
|  |

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1

## EXHIBIT 5

2

Triple Leaf Herbal Laxative Product





*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

1

**EXHIBIT 6**

2

CLRA Letter

3

4

LAW OFFICES OF

## RONALD A. MARRON

5

A PROFESSIONAL LAW CORPORATION

651 Arroyo Drive
San Diego, CA 92103

Tel: 619.696.9006
Fax: 619.564.6665

6

February 21, 2014

7

VIA CERTIFIED MAIL (receipt acknowledgment with signature requested)

8

Triple Leaf Tea, Inc.

Attn: Legal Department

9

20 Buena Vista Rd
South San Francisco, CA 94080

10

Triple Leaf Tea, Inc.
**Agent For Service Of Process**

11

Vincent Lam
434 North Canal Street, Unit 5
South San Francisco, CA 94080

12

13

*RE: NOTICE: Violations of the California Consumer Legal Remedies Act and Duty to Preserve Evidence*

14

Dear Sir or Madam,

15

**PLEASE TAKE NOTICE** that this letter constitutes notice under the California Consumer Legal Remedies Act, ("CLRA"), California Civil Code Section 1750, *et seq.*, (the "ACT") — pursuant specifically to Civil Code Section 1782 — notifying **Triple Leaf Tea Inc.** (collectively, "YOU" and "YOUR") of violations of the Act and of our demand that YOU remedy such violations within thirty (30) days from your receipt of this letter.

16

17

This firm represents Eunice Johnson, who purchased Dieter's Green Tea, (hereafter, the "Product") in either a Price Chopper or Hen House store in the Kansas City, Missouri area, around November of 2012. Ms. Johnson was exposed to and saw YOUR claims about the Product, purchased the Product in reliance on those claims, and suffered injury in fact as a result of YOUR false and misleading advertising.

18

19

YOU falsely advertise and market the Product by putting false and misleading claims on the label, including the Product's name itself – "Dieter's Green" – and "Herbal Support While Dieting," which conveys YOUR intended message that the Product is effective for dieter's and in achieving long-lasting weight loss.

20

21

22

23

24

25

26

27

28

37

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

CLRA Demand Letter
Page 2

_____

In fact, the Product is nothing more than Chinese Mallow[1], a laxative (which YOU claim to be a "stimulant laxative") combined with senna leaf ("Senna"), another stimulant laxative. The Product has no weight loss characteristics, it is not effective for weight loss or appetite suppression and therefore does not work as advertised.

Moreover, Chinese ("Whorled") Mallow can cause dangerous drops in blood sugar levels (hypoglycemia) that can trigger life-threatening complications in persons with certain medical conditions such as diabetes.

Senna can actually thwart weight loss by slowing the metabolism and causing chronic bloating and constipation. Also, Senna may cause abdominal cramps, nausea, fainting, breathing difficulties, fluctuations in body temperature and even organ failure.

Further, stimulant laxatives such as Mallow and Senna can lead to dependence, such that a person needs a stimulant laxative in order to have the bowel movements they used to have normally, without the use of a stimulant laxative.  Therefore, it is false and misleading to claim that the Product "promote[s] cleansing and digestion" because repeated use retards cleansing and digestion.

Additionally, your suggestion that it is safe for consumers to "gradually increase the strength [of the tea made from the Product]" is misleading, because persons will become dependent upon the Product, as a stimulant laxative, to have a normal bowel movement, resulting in substantial discomfort and the detrimental consequences of severe constipation if use of the Product is discontinued.

The Product also recommends the use of YOUR Detox tea and Super Slimming tea, which are both falsely and deceptively advertised in a similar manner.  We further note that the Product's package insert promotes several teas that are unlawful under the federal Food, Drug and Cosmetic Act and California's state law equivalent – the Sherman Law (*see* Cal. Health & Safety Code §§ 109875, et seq.), by advertising teas for "Blood Pressure" relief, "Sugar Balance," and "Cholesterol – Helps Maintain Normal Cholesterol Levels."  Because these teas (and perhaps others) recommend their use for disease conditions, they are unlawful in the absence of a new drug application.  *See, e.g.*, 21 U.S.C. §§ 355(a)-(b); 21 C.F.R. § 101.93(g).

A reasonable consumer would have relied on the deceptive and false claims made in YOUR advertisements and through the exercise of reasonable diligence would not have discovered the violations alleged herein because YOU actively and purposefully concealed the truth regarding YOUR products or services.

In addition to the violations previously identified, please take further notice that YOUR Product's claims constitute a breach of express and implied warranties.  Absent YOUR compliance with YOUR obligations under such warranties and cure of said breach (see 15 U.S.C. §§ 2301, *et seq.*), our client intends to pursue a class action with this regard.

_____

[1] Described in YOUR advertising as "Whorled Mallow."

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

CLRA Demand Letter
Page 3

In conclusion, YOUR material misrepresentations are deceiving customers into purchasing YOUR Product under the representation the Product provides weight loss and weight management benefits, when in fact it does not.

Please be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices in violation of the CLRA include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

YOU have failed to honor your consumer protection obligations. Based upon the above, demand is hereby made that YOU conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies, available for violations of the CLRA, which will be requested in the class action complaint on behalf of our clients and all other similarly-situated U.S. residents:

(1) The actual damages suffered;

(2) An order enjoining you for such methods, acts or practices;

(3) Restitution of property (when applicable);

(4) Punitive damages;

(5) Any other relief which the court deems proper; and

(6) Court costs and attorneys' fees.

Additionally, I remind you of your legal duty to preserve all records relevant to such litigation. See, e.g., *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D 162, 175 (S.D.N.Y 2004); *Computer Ass'n Int'l v. American Fundware, Inc.*, 133 F.R.D. 166, 168-69 (D. Colo. 1990). This firm anticipates that all e-mails, letters, reports, internal corporate instant messages, and laboratory records that related to the formulation and marketing of YOUR products will be sought in the forthcoming discovery process. You therefore must inform any employees, contractors, and third-party agents (for example product consultants and advertising agencies handling your product account) to preserve all such relevant information.

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT

CLRA Demand Letter
Page 4
_____

     In addition, California Civil Code Section 1780 (b) provides in part that: "Any consumer who is **a senior citizen or a disabled person**, as defined in subdivision (f) and (g) of Section 1761, as part of an action under subdivision (a), may seek and be awarded, in addition to the remedied specified therein, up to **five thousand dollars** ($5,000)...." [emphasis added].

     I look forward to YOU taking corrective action. Thank you for your time and consideration in this matter.

               Sincerely,

               **LAW OFFICES OF RONALD A. MARRON**

               */s/ Ronald A. Marron*
               RONALD A. MARRON

               *Counsel for Eunice Johnson,*
                *and all others similarly situated*

*Johnson v. Triple Leaf Tea Inc.*
CLASS ACTION COMPLAINT