1   DION N. COMINOS (SBN: 136522)
    dcominos@gordonrees.com
2   RYAN B. POLK (SBN: 230769)
    rpolk@gordonrees.com
3   GORDON & REES LLP
    Embarcadero Center West
4   275 Battery Street, Suite 2000
    San Francisco, CA 94111
5   Telephone: (415) 986-5900
    Facsimile:  (415) 986-8054
6
7   Attorneys for Defendant
    TRIPLE LEAF TEA, INC.

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11  EUNICE JOHNSON, individually, on behalf of )   CASE NO.  3:14-cv-01570-MMC
    all others similarly situated, and the general )
12  public,                                      )
                                                 )
13                      Plaintiff,               )   **CLASS ACTION**
                                                 )
14            v.                                 )   **DEFENDANT TRIPLE LEAF TEA,**
                                                 )   **INC.'S MOTION TO DISMISS, OR IN**
15  TRIPLE LEAF TEA INC.,                        )   **THE ALTERNATIVE, MOTION TO**
                                                 )   **STRIKE PLAINTIFF'S COMPLAINT**
16                      Defendant.               )
                                                 )   Date:        June 27, 2012
17                                               )   Time:        9:00 a.m.
                                                 )   Courtroom:   7
18                                               )
                                                 )   [Filed concurrently with Request for Judicial
19                                               )   Notice]
                                                 )
20                                               )   Complaint Filed:  April 4, 2014
                                                 )
21  _____ )

22

23

24

25

26

27

28

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 27, 2014 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7, on the 19th Floor of the United States District Court, Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Judge Maxine M. Chesney, Defendant Triple Leaf Tea ("Triple Leaf" or "Defendant") will, and hereby does, move to dismiss the Class Action Complaint ("Complaint") of Plaintiff Eunice Johnson ("Plaintiff").

<u>Motion to Dismiss</u>

Triple Leaf's Motion to Dismiss is made on the following grounds: (i) Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted;  (ii) Fed. R. Civ. P. 12(b)(1) for lack of standing under either Article III or claim-specific state law requirements;  and (iii) Fed. R. Civ. P. 8 for failure to state a plausible claim for relief.

Plaintiff's claims should also be dismissed because they are expressly and impliedly preempted under 21 U.S.C. §§ 343-1 *et seq.*  Alternatively, the Court should stay or dismiss this action in deference to the regulatory authority and expertise of the Food and Drug Administration (FDA) under the primary jurisdiction doctrine.

<u>Motion to Strike</u>

In the alternative, pursuant to Fed. R. Civ. P. 12(f), and to the extent that this action survives the instant motion, Triple Leaf asks the Court to strike as "immaterial" all averments regarding the following, as set forth herein:

(i)     Claims regarding Triple Leaf products that Plaintiff did not purchase;

(ii)    Allegations regarding Plaintiff's Unfair Competition Law (UCL) claims based on the "misbranding" theory;

(iii)   Claims that rely on a strict liability or illegal product theory of liability, and fail to allege a concrete or particularized injury to a purchaser;

(iv)    Allegations or references to a nationwide class action.

In short, if Plaintiff's claims survive at all, they should be limited to challenging the labeling statements as it appears on the Triple Leaf tea product that was allegedly purchased by

-ii-

1    Plaintiff.  This motion is based on this Notice of Motion and Motion, the accompanying

2    Memorandum of Points and Authorities, the anticipated Reply in support of this Motion, and on

3    such other written and oral argument as may be presented to the Court.

4    Dated:  May 16, 2014                              GORDON & REES LLP

5

6                                                      By:    */s/ Dion N. Cominos*
                                                             DION N. COMINOS
7                                                            RYAN B. POLK
                                                            Attorneys for Defendant
8                                                            TRIPLE LEAF TEA, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues:

1. **Standing**.  Can a consumer sue an herbal dietary supplement manufacturer over a product label in the absence of any particularized allegation that Plaintiff suffered an injury in fact, economic or otherwise, within the meaning of Article III and state law? Can Plaintiff sue on the basis of statements and advertising that she never read or saw, or over products not purchased?

2. **Claims Over Products Not Purchased.** Does Plaintiff has standing and has she sufficiently pleaded claims relating to identified and unidentified products and products that she did not purchase?

3. **Plausibility (*Iqbal/Twombly*): No Reasonable Consumer Would Be Deceived.** Can a consumer sue an herbal dietary supplement manufacture over a product label if the product itself is not tainted or corrupted and there is no plausible allegation that he relied, suffered cognizable injury, or was deceived?  As a matter of law, would reasonable consumers be misled by the labeling statement at issue?

4. **Individual Causes of Action (UCL / FAL / CLRA)**.  Has Plaintiff stated a claim under her individual state law causes of action?  Has Plaintiff failed to allege a critical element of her UCL Unlawful Prong under her "misbranding" theory – i.e., must the Court dismiss this claim because Plaintiff fails to allege reliance on, or cognizable injury from, the challenged labeling?

5. **Preemption**.  Are Plaintiff's state-law claims seeking to privately enforce FDA regulations barred under 21 U.S.C. § 337(a) and the Ninth Circuit's holding in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012)?  Are such claims preempted by the Nutrition Labeling and Education Act, 21 U.S.C. § 343-1(a), to the extent Plaintiff seeks to impose product label requirements that are "not identical to" FDA regulations or guidance?  Alternatively, should this Court equitably abstain from adjudicating this case and defer to the FDA under the doctrine of primary jurisdiction?

6. **Extraterritoriality.** Can Plaintiff attempt to incorporate allegations suggesting a nationwide class action, or bring claims under California consumer protection laws for product purchases made outside of California?

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.    BACKGROUND ............................................................................................ 2

III.   APPLICABLE LEGAL STANDARD ............................................................. 4

IV.   ARGUMENT ................................................................................................ 5

    A.   Plaintiff Fails to Establish Article III Standing with Respect to The Product Allegedly Purchased .............................................................. 5

    B.   Plaintiff Fails to Establish Article III Standing or State a Claim with Respect to Products She Did Not Purchase .......................................... 7

    C.   Plaintiff's Claims Are Non-Actionable Because No Reasonable Consumer Could Be Deceived by the Representations in Question .................................... 10

    D.   The UCL, CLRA, and FAL Causes of Action Also Fail to State a Claim ........... 13

        1.   Plaintiff Has Not Alleged Injury or Reliance .......................................... 13

        2.   Plaintiff's "Misbranding" Claim Under the UCL's "Unlawful Prong" Fails .................................................................. 14

    E.   Plaintiff's Warranty Claims are Subject to Dismissal ......................................... 15

        1.   Breach of Express Warranty ................................................................ 15

        2.   Breach of Implied Warranty of Merchantability ..................................... 16

    F.   Plaintiff's Claims Are Preempted by Federal Law ............................................. 16

    G.   The Court Should Abstain or Stay the Case Under the Doctrine of Primary Jurisdiction ................................................................................ 19

    H.   Plaintiff's Attempt to Extend this Case Beyond California Fails ........................ 19

V.    CONCLUSION ................................................................................................ 21

**TABLE OF AUTHORITIES**

**Page No.**

**Cases**

*All One God Faith, Inc. v. Hain Celestial Group, Inc.,*
2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012) ..................................... 19

*Anunziato v. eMachines, Inc.,*
402 F.Supp.2d (C.D. Cal. 2005)..................................................................... 13, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................ 5, 11

*Astiana v. Hain Celestial,*
905 F. Supp. 2d 1013 (N.D. Cal. 2012) .............................................................. 19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................5, 10, 11

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009)................................................................................ 13

*Blum v. Yaretsky,*
457 U.S. 991 (1982) .............................................................................................. 8

*Boysen v. Walgreen Co.,*
2012 U.S. Dist. LEXIS 100528  (N.D. Cal. July 19, 2012)..................................... 6

*Brod v. Sioux Honey Assoc.,*
895 F.Supp.2d 972 (N.D. Cal. 2012)................................................................... 17

*Buckman Co. v. Pls.' Legal Comm.,*
531 U.S. 341 (2001) ............................................................................................ 18

*Burr v. Sherwin Williams Co.,*
42 Cal. 2d 682 (1954) ......................................................................................... 16

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996)................................................................................... 5

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011),
*aff'd at* 475 F. App'x 113 (9th Cir. 2012).................................................... 8, 17

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
598 F.3d 1115 (9th Cir. 2010)............................................................................... 5

*Chavez v. Nestlé USA, Inc.,*
2011 U.S. Dist. LEXIS 58731 (C.D. Cal. May 19, 2011) .................................... 19

*Clapper v. Amnesty Int'l USA,*
133 S. Ct. 1138 (2013)........................................................................................... 5

*Cook, Perkiss & Liehe, Inc. v. N. Cal Collection Serv.,*
911 F.2d 242 (9th Cir. 1990)............................................................................... 12

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PLAINTIFF'S COMPLAINT
Case No.: 3:14-1570-MMC

**TABLE OF AUTHORITIES**

Page No.

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ....................................................................................... 8

*Durell v. Sharp Healthcare,*
    183 Cal.App.4th 1350 (2010) ...................................................................... 15

*Dysthe v. Basic Research LLC,*
    2011 U.S. Dist. LEXIS 137315 (C.D. Cal. June 13, 2011) ........................... 9

*Ferrington v. McAfee, Inc.,*
    No. 10-CV-01455-LHK, 2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010) .............. 18

*Fisher v. Monster Beverage Corp.,*
    2013 U.S. Dist. LEXIS 130789  (C.D. Cal. July 9, 2013) ............................. 6

*Fraker v. KFC Corp.,*
    2006 U.S. Dist. LEXIS 79049 (S.D. Cal. Oct. 19, 2006) ............................. 12

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995)...................................................................... 11, 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ....................................................................................... 5

*Frye v. L'Oreal USA, Inc.,*
    583 F.Supp.2d 954 (N.D. Ill. 2008) .............................................................. 7

*FTC v. Bronson Partners, LLC,*
    564 F.Supp.2d 119 (D. Conn. Jul. 10, 2008) .............................................. 13

*Germain v. J.C. Penney Co.,*
    2009 U.S. Dist. LEXIS 60936 (C.D. Cal. July 6, 2009) ............................... 15

*Gitson v. Clover Stornetta Farms,*
    2014 U.S. Dist. LEXIS 5408 (N.D. Cal. Jan 15, 2014) .................................. 9

*Gomez v. Wells Fargo Bank,*
    676 F.3d 655 (8th Cir. 2012)........................................................................ 7

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) .................................................................................... 10

*Gross v. Symantec Corp.,*
    No. C-12-00154-CRB, 2012 U.S. Dist. LEXIS 107356, (N.D. Cal. July 31, 2012)............... 21

*Gustafson v. BAC Home Loans Serv'g,*
    2012 U.S. Dist. LEXIS 117493 (C.D. Cal. Apr. 12, 2012) ........................... 21

*Herrington v. Johnson & Johnson Consumer Co.,*
    2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) ............................... 5

*Hill v. Roll Int'l Corp.,*
    195 Cal. App. 4th 1295 (2011)...................................................................... 11

## TABLE OF AUTHORITIES

**Page No.**

*In re Actimmune Mktg. Litig.*,
2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Sept. 1, 2010),
*aff'd*, 464 F. App'x 651 (9th Cir. 2011)..................................................................... 14

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
590 F. Supp. 2d 1282 (C.D. Cal. 2008) ....................................................................... 18

*In re Ferrero Litig.*,
794 F.Supp.2d 1107 (S.D. Cal. 2011)........................................................................... 14

*In re Fruit Juice Products Marketing and Sales Practices Litigation*,
831 F.Supp.2d 507 (D. Mass. 2011)............................................................................... 7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................................... 14

*In re Medtronic, Inc.*,
623 F.3d 1200 (8th Cir. 2010) ..................................................................................... 19

*In re Schering-Plough Corp.*,
2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009) ................................................ 18

*In re Toyota Motor Corp.*
785 F. Supp. 2d 883 (C.D. Cal. 2011) ......................................................................... 20

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009)....................................................................................... 11

*Kearns v. Ford Motor Co*,
567 F.3d 1120 (9th Cir. 2009)........................................................................................ 5

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)........................................................................................ 4

*Koehler v. Litehouse, Inc.*,
No. CV-12-04055-SI, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012) .......... 20, 21

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) ..........................................................................................8, 10, 14

*La Duke v. Nelson*,
762 F.2d 1318 (9th Cir. 1985)........................................................................................ 9

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003)....................................................................................... 11

*Lewis v. Casey*,
518 U.S. 343 (1996) ....................................................................................................... 8

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)........................................................................................ 9

*Loreto v. Procter & Gamble Co.*,
515 Fed. Appx. 576 (6th Cir. 2013) ............................................................................ 18

# TABLE OF AUTHORITIES

**Page No.**

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ..................................................................... 5, 8

*Mason v. Coca-Cola Co.,*
774 F.Supp.2d 699 (D.N.J. 2011) .................................................. 13

*Mazza v. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) .......................................................... 20

*Meyer v. Sprint Spectrum, L.P.,*
45 Cal.4th 634 (2009) ..................................................................... 13

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010) .......................................................................... 5

*NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
693 F.3d 145 (2d Cir. 2012) ........................................................... 10

*Osborne v. Subaru of America, Inc.,*
198 Cal.App.3d 646 (1988) ............................................................ 16

*Pappas v. Naked Juice Co. of Glendora, Inc.*
2012 U.S. Dist. LEXIS 76067 (C.D. Cal. May 14, 2012) ............. 16

*Perez v. Nidek,*
711 F.3d 1109 (9th Cir. 2013) .................................................... 18, 19

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ....................................................................... 21

*Pirozzi v. Apple Inc.,*
913 F.Supp.2d 840 (N.D. Cal. 2012) ............................................... 6

*Pom Wonderful v. The Coca-Cola Co.,*
679 F.3d 1170 (9th Cir. 2012) ........................................... iv, 17, 19

*Red v. Kraft Foods,*
2011 U.S. Dist. LEXIS 116965 (C.D. Cal. Sept. 29, 2011) ........... 21

*Riley v. Cordis Corp.,*
625 F. Supp. 2d 769 (D. Minn. 2009) ............................................ 18

*Rivera v. Wyeth-Ayerst Laboratories,*
283 F.3d 315 (5th Cir. 2002) ............................................................ 7

*Rooney v. Cumberland Packing Corp.,*
2012 U.S. Dist. LEXIS 58710 (S.D. Cal. April 16, 2012) ............... 4

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.,*
902 F.2d 222 (3d Cir. 1990) ........................................................... 18

*Sateriale v. R.J. Reynolds Tobacco Co.,*
697 F.3d 777 (9th Cir. 2012) .......................................................... 14

**TABLE OF AUTHORITIES**

Page No.

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) ................................................................................................. 9

*Simon v. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ................................................................................................... 8

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................................................................... 11

*Stearns v. Select Comfort Retail Corp.*,
763 F.Supp.2d 1128 (N.D. Cal. 2010) .................................................................. 16

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .................................................................................... 19, 20

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ................................................................................. 19

*Taradejna v. Gen. Mills*,
909 F. Supp. 2d 1128 (D. Minn. 2012) ................................................................. 19

*Torres v. City of Madera*,
2005 U.S. Dist. LEXIS 34672,
2005 WL 1683736 (E.D. Cal. 2005) ...................................................................... 16

*Turek v. General Mills, Inc.*,
662 F.3d 423 (7th Cir. 2011) ................................................................................. 17

*United States v. W. Pac. R.R. Co.*,
352 U.S. 59 (1956) ................................................................................................. 19

*Verzani v. Costco Wholesale Corp.*,
2010 U.S. Dist. LEXIS 107699 (S.D.N.Y. Sept. 28, 2010)
*aff'd* at 432 Fed. Appx. 29 (2d Cir. 2011) ............................................................. 18

*Viggiano v. Hansen Natural Corp.*,
944 F.Supp.2d 877 (C.D. Cal. 2013) ........................................................ 13, 15, 16

*Von Koenig v. Snapple Beverage Corp.*,
713 F. Supp. 2d 1066 (E.D. Cal. 2010) ................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ............................................................................................. 8

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................................................. 8

*Wilson v. Frito-Lay N. Am.*,
2013 U.S. Dist. LEXIS 153136 (N.D. Cal. Oct. 24, 2013) .................................. 14

*Yumul v. Smart Balance, Inc.*,
2011 U.S. Dist. LEXIS 109952 (C.D. Cal. March 14, 2011) ............................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page No.**

**Statutes**

21 United States Code
    section 301 ................................................................................................................. 3

21 United States Code
    section 343 ............................................................................................................... 17

21 United States Code
    section 343-1 ........................................................................................................... 17

21 United States Code
    section 393 ............................................................................................................... 17

Business & Professions Code
    section 17200.............................................................................................................. 3

Business & Professions Code
    section 17204............................................................................................................ 10

Business & Professions Code
    section 17500.............................................................................................................. 3

California Health & Safety Code
    sections 109875-111915 ........................................................................................... 3

Civil Code
    section 1750 ............................................................................................................... 3

Code of Civil Procedure
    section 337 ............................................................................................................... 18

**Rules**

Federal Rules of Civil Procedure
    rule 12 .................................................................................................................... 4, 5

Federal Rules of Civil Procedure
    rule 9 ...................................................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Eunice Johnson brings this action on behalf of herself and a putative nationwide class of purchasers who bought three varieties of Triple Leaf Tea, Inc. ("Triple Leaf").  Yet of the three teas covered by Plaintiff's Complaint, Plaintiff herself only purchased 1, which she did not even drink.

Plaintiff's Complaint is a 40 page, 158 paragraph production that is far from a short and plain statement of facts apprising Defendant and this Court of the nature of the claims at issue. As a result, it is difficult to discern exactly what Plaintiff is claiming, individually or on behalf of the class.  If Defendant is parsing the allegations correctly, the crux of Plaintiff's Complaint appears to claim that the packaging on the tea makes allegedly false and deceptive statements concerning weight loss (even though none of the teas at issue makes <u>any</u> representations of the kind) and conceals the danger of senna leaf and Chinese mallow (two ingredients founds in the teas).

According to Plaintiff, these alleged misrepresentations and omissions violate various California consumer protection statutes – the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA") – because they are supposedly deceptive in nature and, as such, run afoul of the Food Drug and Cosmetic Act ("FDCA") and California's Sherman Law.  Plaintiff further alleges that these same statements give rise claims for breach of express warranty and breach of implied warranty of merchantability.

Though long on rhetoric, the Complaint is short on substance and is should be dismissed for at least five reasons:  <u>First</u>, Plaintiff cannot show any Article III "injury-in-fact" or other standing under her various state law causes of action.  Plaintiff claims that all Triple Leaf tea products are "worthless."  However, merely buying a product that was fit for its intended use does not constitute actual injury nor does it furnish Article III standing.  <u>Second</u>, Plaintiff cannot sue over products she did not purchase (or consume) or for product representations she did not read and rely upon prior to purchase as Plaintiff lacks standing to make such claims.  <u>Third</u>,

-1-

1    Plaintiff's claims are not actionable because no reasonable consumer would likely be deceived.

2    <u>Fourth</u>, none of Plaintiff's causes of action states a viable claim under applicable state law.

3    <u>Fifth</u>, Plaintiff's claims are impliedly or expressly preempted; and even if they are not, this Court

4    should defer to the primary jurisdiction of the FDA and its comprehensive regulation of food

5    labeling.

6      At bottom, Plaintiff's Complaint fails to satisfy minimum pleading requirements and

7    should be dismissed without leave to amend.  Alternatively, Triple Leaf respectfully requests that

8    the Court strike claims regarding: Triple Leaf products that Plaintiff did not purchase; allegations

9    regarding the Unfair Competition Law claim based on Plaintiff's "misbranding" theory; claims

10   that rely on a strict liability or illegal product theory of liability or fail to allege a concrete or

11   particularized injury to a purchaser; and allegations or references to a nationwide class action.

12   **II. BACKGROUND**

13     Plaintiff purports to bring this putative class action lawsuit on behalf of consumers who

14   purchased Triple Leaf's "Dieter's Green Herbal Tea," "Ultra Slim Herbal Tea," and "Super

15   Slimming Herbal Tea" (collectively referred to as "the Teas").  (Complaint, ¶ 18.)  Plaintiff

16   alleges that she bought a box of Dieter's Green Herbal Tea in Kansas City, Missouri in

17   November 2012. She does not allege, however, that she bought either the Ultra Slim Herbal Tea

18   and/or Super Slimming Herbal Tea.  Nor does Plaintiff allege that she actually brewed and drank

19   the tea.  Also absent from the Complaint are any allegations outlining the duration of use, her

20   dietary goals, or any other facts to support her allegation that the product did not work *for her* as

21   advertised.  (Complaint, ¶ 17.)

22     The root of Plaintiff's claims is that the Teas "contain no weight loss ingredients or fat

23   burners" and do not constitute "an effective treatment for weight loss or appetite suppression and

24   [do] not work as advertised."  (Complaint, ¶ 17.)  Plaintiff also claims that Triple Leaf somehow

25   "conceals the dangers" of two ingredients contained in the Teas – senna leaf (*Cassia angustfolia*)

26   and Chinese mallow (*Malva verticillata*).  According to Plaintiff, these alleged deficiencies

27   resulted in the Teas' being "unlawful misbranded foods" for purposes of the FDCA (21 U.S.C.

28   §§ 301 *et seq.*)  thereby violating California's Sherman Law (Cal. Health & Safety Code §§

-2-

109875-111915).  Plaintiff seeks to vindicate the alleged Sherman Law violations through various state law claims including: (i) the "unlawful" prong of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) (Complaint, ¶ 128), (ii) the UCL's "unfair" prong (*id.* at ¶ 132), (iii) the UCL's "fraudulent" prong (*id.* at ¶ 133), (iv) false and deceptive advertising under the False Advertising Law (Bus. & Prof. Code § 17500) (*id.* at ¶ 143), (v) and the Consumers Legal Remedies Act (Civ. Code § 1750) (*id.* at ¶ 117).  Plaintiff also alleges causes of action for breach of express and implied warranty.

The Teas, however, do not claim that they are "effective for weight-loss" (Complaint, ¶ 9), that they are "a means of losing and managing weight" (*id.* at ¶ 13), or that they are "a natural means to help lose weight" (*id.* at ¶ 25).  Rather, the Teas' labeling and packaging ("Packaging") makes clear that the Teas merely constitute "Traditional Herbal Support While Dieting" that simply help promote "cleansing," "digestion," and "detoxification."  (*See* Complaint, Exhibit 1.) The fact that the Teas are *not* intended to effectuate weight loss itself is further reinforced by the statements on the Packaging reminding consumers "to follow a balanced weight loss diet and the advice of your health care professional" and recommending that they "eat plenty of fresh vegetables, fruits, juices and pure water."  Completely absent from the packaging is *any* guarantee or warranty that consuming the Teas will result in weight loss.

Moreover, Plaintiff has failed to include the key representations prominently displayed on the side of the Tea box, as follows:

> This popular tea was used traditionally in China to help promote cleansing and digestion.*  Its traditional Chinese name comes from the green-colored herbs in the formula.*  Senna and whorled mallow (Malva verticillata) are herbal stimulant laxatives that were used to promote bowel movements and cleansing.*  Whorled mallow and persimmon leaf were said to soothe and harmonize the stomach and digestive system.*  Research indicates that green tea's antioxidants help promote healthy metabolism.*  The decaf green tea in this formula is naturally decaffeinated using a carbon dioxide decaf process that retains the antioxidants.* ***Remember when dieting to follow a balanced weight loss diet and the advice of your health care professional.*  Be sure to eat plenty of fresh vegetables, fruits, juices, and pure water.****  For additional support in cleansing, use this tea along with Triple Leaf Detox Tea.*
>
> SUGGESTED USE:  1 cup after dinner, not to exceed 2 cups in 24 hours.*  When

-3-

first using this tea, make it weak by brewing it briefly.  Or, brew 1 tea bag in 2 cups of water for 2 minutes, remove the tea bag and drink 1 cup hot or cold.* Refrigerate the 2nd cup to drink the next day.*  After several days, you may gradually increase the strength to suit your individual taste.*  ***Do not drink for more than 7 consecutive days unless directed by your doctor.****

***\*These statements have not been evaluated by the Food and Drug Administration.  This product is not intended to diagnose, treat, cure or prevent any disease.***

(Request for Judicial Notice ("RJN") filed herewith at Exhibit A [emphasis added].) [1]

In addition to the foregoing representations, the Packaging also includes the stimulant laxative (Senna leaf) warning required by California law, and which is on all of the Tea packaging sold nationwide:

NOTICE: This product contains senna leaf. Read and follow directions carefully. **Do not use if you have or develop diarrhea, loose stools, or abdominal pain because senna leaf may worsen these conditions and be harmful to your health.** Consult your physician if you have frequent diarrhea or if you are pregnant, nursing, taking medication, or have a medical condition.

(Complaint, Exhibit 3.)

Finally, Plaintiff also fails to note the Packaging contains a money back guarantee, which provides "Guarantee: 100% satisfaction, or your money back."  (RJN, Exhibit B.)

In her Prayer for Relief, Plaintiff seeks, among other things, compensatory and punitive damages, restitution, disgorgement of revenues, interest, attorney fees, and equitable relief. (Complaint, ¶¶ 29-30.)

## III.    **APPLICABLE LEGAL STANDARD**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court must accept all factual allegations pleaded in the complaint as true, *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), but it need not accept unreasonable inferences or legal conclusions cast in the form of factual

---

[1] Although not attached to Plaintiff's Complaint as an Exhibit, these additional representations found on the Packaging are subject to judicial notice and may be considered by the Court at the pleading stage.  *See Rooney v. Cumberland Packing Corp.*, 2012 U.S. Dist. LEXIS 58710 *7 (S.D. Cal. April 16, 2012); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

1  allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("bare assertions . . . amount[ing] to

2  nothing more than a 'formulaic recitation of the elements'" are not entitled to an assumption of

3  truth (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Where, as here, claims

4  (including state law causes of action) are not sufficiently pled, they must be dismissed.  *Kearns*

5  *v. Ford Motor Co*, 567 F.3d 1120, 1127-28 (9th Cir. 2009); *see also Herrington v. Johnson &*

6  *Johnson Consumer Co.*, 2010 U.S. Dist. LEXIS 90505, **26-27 (N.D. Cal. Sept. 1, 2010)

7  (dismissing UCL, FAL, and CLRA claims not pleaded with particularity).

8  **IV.   ARGUMENT**

9       **A.   Plaintiff Fails to Establish Article III Standing with Respect to The Product**
             **Allegedly Purchased**

10

11       To have standing to sue under Article III of the U.S. Constitution, Plaintiff must have

12  sufficient injury to satisfy the "case or controversy" requirement.  *See Clapper v. Amnesty Int'l*

13  *USA*, 133 S. Ct. 1138, 1146 (2013).  Plaintiff must allege: (1) an injury-in-fact that is concrete,

14  particularized, and actual or imminent; (2) that is fairly traceable to the challenged action of the

15  defendant; and (3) that is redressable by a favorable ruling.  *Monsanto Co. v. Geertson Seed*

16  *Farms*, 561 U.S. 139, 149 (2010);  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

17  *Inc.*, 528 U.S. 167, 180-81 (2000).  "The party invoking federal jurisdiction bears the burden of

18  establishing these elements. . . . with the manner and degree of evidence required at the

19  successive stages of the litigation." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

20  When Article III standing requirements are not satisfied, a motion to dismiss for lack of subject

21  matter jurisdiction is proper.  Fed. R. Civ. P. 12(b)(1);  *see Lujan*, 504 U.S. at 561;  *Chandler v.*

22  *State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

23       Here, Plaintiff's purported "injury" arises from the allegation that Triple Leaf's products

24  did not work as advertised and therefore Plaintiff received "a product worth much less, or which

25  was worthless."  (Complaint, ¶ 98.)  In order to assert the type of economic injury that Plaintiff is

26  alleging, she must demonstrate that she was allegedly deceived, and either paid a premium for

27  the product or would have purchased an alternative product.  *Fisher v. Monster Beverage Corp.,*

28  2013 U.S. Dist. LEXIS 130789 *15-*16 (C.D. Cal. July 9, 2013); *see also Pirozzi v. Apple Inc.*,

913 F.Supp.2d 840 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing; *Boysen v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 100528 *7 (N.D. Cal. July 19, 2012) (an economic injury is sufficiently alleged if plaintiff would have purchased an alternative beverage "had defendant's [beverage] been differently labeled.")

Plaintiff fails this test.  Completely absent from Plaintiff's Complaint is any allegation that she actually consumed the Tea she purchased or that she suffered any of the alleged health risks she attributes to the Teas ingredients – i.e., senna leaf and whorled mallow.  Instead of alleging any actual harm from drinking the Tea, Plaintiff attempts to manufacture an injury by alleging that she suffered an economic injury by simply purchasing the Tea.  Standing alone, however, this is insufficient to satisfy Article III standing requirements.  As established by the decisional authority above, a plaintiff *must* also allege that she either paid a premium for the product or would have purchased an alternative product.  Plaintiff here does not (*see* Complaint, ¶¶ 23-34, 82-102), and her failure to do so is fatal to her lawsuit.

Rather, Plaintiff's attempts to conjure up an injury by stating that she would not have purchased the Tea had she known that consuming it *could* have certain health risks and that it does not work as advertised even though she never drank the Tea.  But this is insufficient to furnish standing under Article III.  Indeed, the Tea she purchased was not unfit for its intended use (herbal support while dieting and helping to promote cleansing) and there is no difference between the product as advertised and the product she purchased.  Plaintiff does not allege that the Tea was tainted, spoiled, or contaminated.  Rather, she got exactly what was promised.  Under the circumstances, courts agree that claims such as these fail the test of Article III.

In *Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315 (5th Cir. 2002), for example, purchasers of an anti-inflammatory drug brought a putative class action on behalf of consumer who were prescribed or had taken the drug seeking.  Plaintiffs claimed that the defendant concealed alleged health risks associated with the drug.  Similar to the claims here, Plaintiff alleged causes of action for deceptive business practices and breach of warranties based on the

alleged concealment and sought restitution.  The *Rivera* court, however, held that the wrongs Plaintiffs alleged were in essence product liability claims and that "[m]erely asking for money does not establish an injury in fact." *Id.* at 319.  Similarly, in *In re Fruit Juice Products Marketing and Sales Practices Litigation,* 831 F.Supp.2d 507 (D. Mass. 2011), plaintiffs alleged the presence of trace amounts of lead rendered fruit juices unsuitable for their intended purpose. The MDL court found the alleged injury inadequate:

> Because Plaintiffs are unable to show that any actual harm resulted from consumption of the fruit juice products, their allegation of "economic" injury lacks substance.  The fact is that Plaintiff paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.

*Id.* at 513; *see also Frye v. L'Oreal USA, Inc.*, 583 F.Supp.2d 954, 958 (N.D. Ill. 2008) (plaintiff failed to alleged observable economic consequences based on lead in lipstick); *Gomez v. Wells Fargo Bank,* 676 F.3d 655, 661-62 (8th Cir. 2012) (no standing because plaintiffs cannot allege lost money or property where plaintiffs paid market rates for appraisal services and received such services).

Here, Plaintiff paid for Tea, and she received Tea.  If anything, this case is more compelling than *Rivera* and *In re Fruit Juice* because Plaintiff does not allege that she actually consumed the Tea or that it did not work *for her* as advertised.  Indeed, the fact that *others* may have consumed the Tea and suffered alleged health risks or that *others* found that the Tea did not work as advertised is insufficient for *this* Plaintiff to establish standing under Article III. Plaintiff alleges no cognizable injury and her claim should be dismissed.

     **B.**     **Plaintiff Fails to Establish Article III Standing or State a Claim with Respect to Products She Did Not Purchase**

Plaintiff also improperly tries to represent a putative class based on Teas she did *not* purchase, consume, or from which she suffered adverse health effect – i.e., the Super Slimming Herbal Tea and Ultra Slim Herbal Tea.   As an initial matter, Plaintiff fails to satisfy basic standing requirements, by failing to allege any "injury in fact" from these non-purchased teas. *See Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  It is axiomatic that a "plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*,

-7-

547 U.S. 332, 335 (2006).  Specifically, Plaintiff does not allege facts to support standing for claims challenging the teas she did not purchase.  *Id.* at 353 (failure to establish Article III injury with respect to state taxes, and even if they did with respect to municipal taxes, that injury does not entitle them to a remedy as to state taxes); *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322-23 (2011).  Because Plaintiff cannot allege any injury suffered based on products she did not purchase, these claims should be dismissed. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371, **7-8 (N.D. Cal. Jan. 10, 2011) (unless Plaintiff actually purchases a product, he cannot prove that he "suffered any injury or lost money or property with respect to those products"), *aff'd* at 475 F. App'x 113 (9th Cir. 2012).

Moreover, Plaintiff's class allegations do not provide a way around these standing requirements.  As the Supreme Court has repeatedly held, "standing is not dispensed in gross" and "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."  *Lewis v. Casey,* 518 U.S. 343, 358 n. 6 (1996) (citing *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)).[2]  The purchase of a single Triple Leaf Tea (Dieter's Green Herbal Tea) does not allow Plaintiff to "bootstrap" standing to challenge the other Triple Leaf products she did not purchase.  Furthermore, "[t]o have standing to sue as a class representative[,] it is essential that a plaintiff must be a part of that class, that is, he must possess the *same* interest and suffer the *same* injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (emphases added). These claims should be dismissed at the pleading stage because standing "is a jurisdictional element that must be satisfied prior to class certification."  *La Duke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985);  *see also Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (it is "premature to assess" class certification if the named plaintiff lacks

___

[2] *Simon v. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (same);  *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (same);  *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) ("[T]he Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge or modify any substantive right.") (internal quotation marks omitted);  *cf. La Duke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985) ("[C]ertification is not sufficient in itself to bestow standing on individuals . . . who lack[] the requisite personal stake at the outset.").

1   standing).  Plaintiff cannot show injury in fact traceable to products not purchased.

2        While it is true that some courts have permitted a Plaintiff to bring a putative class action

3   based on products s/he did not purchase where there is sufficient similarity between the products

4   purchased and not purchased (*see, e.g., Gitson v. Clover Stornetta Farms*, 2014 U.S. Dist.

5   LEXIS 5408 *18-*21 (N.D. Cal. Jan 15, 2014), Plaintiff still lacks standing here.  Plaintiff has

6   not alleged sufficient facts showing that Dieter's Green Herbal Tea, which Plaintiff purchased, is

7   substantially similar to the Ultra Slim Herbal Tea and Super Slimming Herbal Tea, the teas she

8   did not purchase.

9        Although the Teas here contain senna leaf, whorled mallow leaf, and persimmon leaf, the

10   Super Slimming Herbal Tea and Ultra Slim Herbal Tea are not teas made with green tea.

11   (Complaint, Exhibit 3.)  Indeed, Dieter's Green Herbal Tea is the only one that contained green

12   tea leaf (which is decaffeinated).  (*Ibid.*)  Moreover, Dieter's Green Herbal Tea is not made with

13   papaya leaf, as with the other Teas, nor do its ingredients include licorice root (found only in the

14   Super Slimming Herbal Tea) or loquat leaf (found only in the Ultra Slim Herbal Tea).  (*Ibid.*)  At

15   first glance, the differences in ingredients might seem negligible, but they are quite significant

16   when it is recognized that the Teas only contain 4 ingredients (Dieter's Green Herbal Tea) or 5

17   (Ultra Slim Herbal Tea and Super Slimming Herbal Tea) ingredients.  At best, Dieter's Green

18   Herbal Tea is only partially similar to the other two teas because it is missing two ingredients

19   found in the other Teas and Dieter's Green Herbal Tea's second ingredient, green tea leaf, is

20   absent in the other two products.  *See Dysthe v. Basic Research LLC*, 2011 U.S. Dist. LEXIS

21   137315, *13 (C.D. Cal. June 13, 2011) ("Having a few common ingredients is simply not enough

22   to show the Products are the same or even 'nearly identical'" for purposes of establishing

23   standing).

24        Moreover, the Super Slimming Herbal Tea makes representations about licorice root

25   ("Licorice root is known as the 'Great Detoxifier" in Chinese herbology") and ("[P]apaya [was]

26   used to support healthy stomach function and digestion").  (RJN, Exhibit A.)  But neither

27   ingredient is found in Dieter's Green Herbal Tea.  (*Ibid.*)  Similarly, Dieter's Green Herbal Tea

28   contains representations about the properties of green tea ("Research indicates that green tea's

-9-

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PLAINTIFF'S COMPLAINT
Case No.: 3:14-1570-MMC

antioxidants help promote [a] healthy metabolism.") not present on the packaging for the other teas.  (*Ibid.*)  As such, these statements cannot, and do not, "implicate[] the 'same set of concerns'" for putative class members as they did for the Plaintiff, who purchased only one tea. *See NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003).  Plaintiff's claims related to non-purchased products should be dismissed for lack of standing.

Finally, as a practical matter, Triple Leaf should not be required to defend a lawsuit about non-purchased products when no named Plaintiff can provide relevant discovery or information about these claims since Triple Leaf would not be able to ask the named Plaintiff about critical aspects of the claims asserted regarding the non-purchased products—for example, why they are allegedly deceptive, what were the circumstances of the product purchase, what the consumer viewed on the label, what expectations the consumer had, how the consumer sustained an injury from buying them, and whether the consumer availed themselves of the money back guarantee. As to these teas, Triple Leaf should not be forced to defend a private regulatory lawsuit of the very type Proposition 64 was specifically enacted to prevent.  *See Kwikset*, 51 Cal. 4th at 320-21.[3]

### C.   Plaintiff's Claims Are Non-Actionable Because No Reasonable Consumer Could Be Deceived by the Representations in Question

The law requires a complaint to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly* ,550 U.S. 544, 570 (2007).  A claim is plausible on its face only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678;  *see also Twombly*, 550 U.S. at 556.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  This analysis provides a critical gatekeeping function which ensures that claims are sufficiently pleaded "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and

---

[3] California Proposition 64 (Bus & Prof Code § 17204), was adopted to prevent suits filed by plaintiffs who never relied on the misrepresentation.

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PLAINTIFF'S COMPLAINT
Case No.: 3:14-1570-MMC

continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). As alleged in the Complaint, it is simply not plausible that a reasonable consumer would be deceived by the Packaging.

Plaintiff suggests that all class members shared her beliefs (which were apparently formed without her actually have consumed *any* of the Teas). Fortunately, advertising claims do not solely focus on what the mere belief of an individual plaintiff, but look to the understanding of "a reasonable consumer who is a member of the target population." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009). And in this case, that means it must be facially plausible that "members of the public are likely to be deceived" by the Teas' packaging. Alleging a mere possibility that a label could conceivably be misunderstood by a minority of consumers is insufficient to survive a motion to dismiss. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Rather, a significant portion of the general consuming public or targeted consumers, acting reasonably, must have been misled. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

Here, Plaintiff alleges that the following affirmative "representations" are somehow misleading:

- Triple Leaf's representation that the Teas are "Herbal Dietary Supplements" (Complaint, ¶ 12);

- Triple Leaf's representation that the Teas offer "Traditional Herbal Support While Dieting" (Complaint, ¶ 12);

- Triple Leaf's "Dieter's Green Herbal Tea" product label (Complaint, ¶ 21, 53(a));

- Triple Leaf's representation that "Dieter's Green Herbal Tea" offers "Support While Dieting" (Complaint, ¶ 2);

- Triple Leaf's representation that "Dieter's Green Herbal Tea" is derived from "time-tested knowledge" (Complaint, ¶ 21);

- Triple Leaf's "Ultra Slim Herbal Tea" product label (Complaint, ¶ 53(b));

- Triple Leaf's "Super Slimming Herbal Tea" product label (Complaint, ¶ 53(c));

- Triple Leaf's representation that the Teas contain a "proprietary blend of herbs" (Complaint, ¶ 56);

- Triple Leaf's representation that the Teas "Helps Promote Cleansing" (Complaint, ¶ 57); and

-11-

- Triple Leaf's representation that "[t]he Chinese systems of herbology has been recorded in ancient texts which are studied and employed even today."  (Complaint, ¶ 59.)

These statements, however, are exactly the type of "[g]eneralized, vague and unspecified assertions" upon which a reasonable consumer cannot rely, particularly given the warnings and disclaimers contained on the Packaging, and hence are not actionable.  At bottom, they are "non-specific indeterminate statements" that cannot be adjudged by empirical verification.  *Fraker v. KFC Corp.*, 2006 U.S. Dist. LEXIS 79049 *10 (S.D. Cal. Oct. 19, 2006).  Indeed, absent from the Packaging is any express or implied representation that the Tea effectuates weight loss.  At best, the foregoing representations are non-actionable puffery, which is a legal question that is suitable for a motion to dismiss.  *Cook, Perkiss & Liehe, Inc. v. N. Cal Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990).  As for Plaintiff's claims that Triple Leaf has hidden the purported "dangers" of senna leaf and whorled mallow, it is undisputed that the Product bears the required Senna notice (Complaint, ¶ 63; Exhibit 3) and advises purchasers not to drink the Tea "for more than 7 consecutive days unless directed by your doctor."  (RJN, Exhibit A.)  Because a consumer must analyze the Packaging as a *whole*, these claims too are not actionable.  *Freeman,* 68 F.3d 285, 289-290.

*FTC v. Bronson Partners, LLC*, 564 F.Supp.2d 119 (D. Conn. Jul. 10, 2008) is instructive on when representations *are* actionable.  There, the Federal Trade Commission brought an enforcement action against advertisers of "Chinese Diet Tea" for false advertising.  At issue was a one-page advertisement that stated that the subject product would help the consumer "shed[] pound after pound of fat – fast."  The advertisement also claimed that "You eat your favorite foods – but STILL lose weight!," "Eliminates an amazing 91% of absorbed sugars," "Prevents 83% of fat absorption," and "Doubles your metabolic rate to burn calories fast."  Included in the advertisement were several testimonials of purported purchasers, including one whom claimed to have lost up to "64 lbs in 10 weeks."  *Id.* at 122-123.  In contrast, none of the representations on the Packaging here makes specific health related claims promising that consuming the Tea will result in any weight loss or any scientific claims as to how the product functions to effectuate such weight loss.

-12-

By the same token, the names of the Teas – Dieter's Green Herbal Tea, Ultra Slim Herbal Tea, and Super Slimming Herbal Tea – are not misleading either.  *See Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 895 (C.D. Cal. 2013) (use of the word "premium" is not actionable); *Anunziato v. eMachines, Inc.,* 402 F.Supp.2d at 1140-1141 (C.D. Cal. 2005) ("Quality," "high quality," "reliability," "performance," and "latest technology" are non-actionable puffery).  Indeed, the names of the Teas are akin to everyday items consumed by millions of consumers such as "Diet Coke" or "Slim Fast."  No consumer purchasing these products could reasonably believe that either is an agent that, by itself, directly causes, effectuates, or results in weight loss.  *See Mason v. Coca-Cola Co.*, 774 F.Supp.2d 699 (D.N.J. 2011) (motion to dismiss granted where Plaintiffs alleged that "Diet Coke Plus" was misleading because the term "Plus" implied the product was "healthy.")

### D.     The UCL, CLRA, and FAL Causes of Action Also Fail to State a Claim

#### 1.     Plaintiff Has Not Alleged Injury or Reliance

Plaintiff further lacks standing to assert claims under the UCL and FAL because she does not allege facts showing she "suffered an injury in fact" and "lost money or property" as a result of alleged unfair competition.  As noted above, she suffered no cognizable injury.  Her claim is like that of the plaintiff in *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009), in which the mere purchase of an iPod that might subject a user to a risk of hearing loss was not enough to create standing.  Likewise, here, Plaintiff lacks standing under the CLRA because she does not sufficiently allege any damage.  *See Meyer v. Sprint Spectrum, L.P.*, 45 Cal.4th 634, 641 (2009) (dismissing claim for failure to allege "damage" under the CLRA).  For the same reasons Plaintiff's allegation of economic injury fail under Article III, they fail under these statutes as well.

Plaintiff's UCL, FAL, and CLRA claims fail for the additional reason that they have not adequately pled reliance.  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 784, 793 (9th Cir. 2012) (Where claims sound in fraud, plaintiffs must "prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of injury producing conduct.")  (citations and quotations omitted); *In re Ferrero Litig.*, 794

-13-

1    F.Supp.2d 1107, 1112 (S.D. Cal. 2011).  As explained above, no reasonable consumer would be

2    misled.

3         **2.    Plaintiff's "Misbranding" Claim Under the UCL's "Unlawful Prong"**
             **Fails**

4

5         Plaintiff also appears to provide a separate theory of liability under the UCL's

6    unlawfulness prong – a "misbranding theory" distinct from the portion of her UCL claim based

7    on allegations that she was misled or deceived by Triple Leaf's labels.  (Complaint ¶73-81, 93,

8    129.)  Plaintiff seems to claim that Triple Leaf's labels are unlawfully misbranded under the

9    Sherman Law (and FDCA), and are therefore actionable under the UCL's unlawfulness prong

10   even absent allegations of economic injury and reliance.  *See ibid.*  Plaintiff's theory of liability

11   for this facet of her UCL claim is that a mere violation of the underlying regulations, without

12   more, is enough to state a claim for a UCL unlawfulness prong violation.  This theory, however,

13   is akin to strict liability and is therefore subject to dismissal.  *See Wilson v. Frito-Lay N. Am.*,

14   2013 U.S. Dist. LEXIS 153136, **23-24 (N.D. Cal. Oct. 24, 2013).

15        Similar to Article III standing requirements, a UCL plaintiff must demonstrate that s/he

16   suffered *economic* injury "as a result of" the alleged unfair competition.  *Kwikset*, 51 Cal. 4th at

17   326, 335.  In the UCL context, this means that Plaintiff must demonstrate she lost money or

18   property due to her reliance on an unlawful practice – i.e., the alleged misbranding.  *In re iPhone*

19   *Application Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012);  *In re Actimmune Mktg. Litig.*,

20   2010 U.S. Dist. LEXIS 90480, **23, 33-34 (N.D. Cal. Sept. 1, 2010) , *aff'd*, 464 F. App'x 651

21   (9th Cir. 2011) (alleging unlawfulness alone, without reliance, "only accomplishes half of [the

22   plaintiff's] burden in a UCL unlawful prong action," since the statutory language places a burden

23   of reliance on the plaintiff);  *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363 (2010).

24        Here, however, Plaintiff's allegation that a technical labeling defect rendered the product

25   "worthless" (Complaint, ¶ 98) is insufficient to support a UCL claim.  *See, e.g., Germain v. J.C.*

26   *Penney Co.,* 2009 U.S. Dist. LEXIS 60936, **17-18 (C.D. Cal. July 6, 2009); *Von Koenig v.*

27   *Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1079 n.9 (E.D. Cal. 2010).  Indeed, a consumer

28   receives some benefit from a product that serves its intended purpose.  *See Germain,* 2009 U.S.

Dist. LEXIS 60936 at *18 ("Plaintiffs have not 'lost money or property' because they purchased Dockers merchandise, which they retained and used[.]"); *Von Koenig,* 713 F. Supp. at 1079 n.9 ("[I]t is reasonable to infer that they received at least some benefit from the purchase and consumption of defendant's drink products[.]").  Because a consumer claim cannot be grounded on a *per se,* strict liability theory of a Sherman Law violation, Plaintiff's allegations of economic injury fail here (as they do under Article III).

<b>E.    <u>Plaintiff's Warranty Claims are Subject to Dismissal</u></b>

<b>1.    Breach of Express Warranty</b>

Plaintiff has also failed to allege a cause of action for breach of express warranty.  To sufficiently assert an express warranty claims, a plaintiff must alleged that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff.  *Viggiano,* 944 F.Supp.2d at 893.

Plaintiff claims that Triple Leaf expressly warranted that the Products were "effective, proper, and safe for their intended use."  Complaint, ¶ 149.  Absent from the Packaging, however, is any such written statement.  As such, Plaintiff has failed to sufficiently allege that Triple Leaf made a written "affirmation of fact or promise" and the claim fails for failure to allege the first element for such a claim.

To the extent that Plaintiff claims that Triple Leaf made express warranties based on the names of the Teas and the statement that they "Offer . . . Herbal Support While Dieting," these too cannot form the basis for a breach of express warranty claim.  These are not the kind of "explicit promise[s] by [a] seller" required to assert a breach of warranty claim (*Stearns v. Select Comfort Retail Corp.,* 763 F.Supp.2d 1128, 1142 (N.D. Cal. 2010); rather they are rather "generalized, vague and unspecific assertions," and are therefore not actionable.  *Viggiano,* 944 F.Supp.2d at 894; *Cf. Hairston v. South Beach Beverage Co.,* 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012) (rejecting warranty claims because "all natural vitamins" label claim and names of various flavors constitute product descriptions rather than promises); *Pappas v. Naked Juice Co. of Glendora, Inc.* 2012 U.S. Dist. LEXIS 76067 (C.D. Cal. May 14, 2012) ("All

-15-

1  natural," "100% juice," "non-GMO" and "from concentrate" label statements" are not warranty

2  claims.)  The breach of express warranty claim therefore fails.

3          **2.**        **Breach of Implied Warranty of Merchantability**

4          California recognizes the implied warranty of merchantability. *Torres v. City of Madera*,

5  2005 U.S. Dist. LEXIS 34672, 2005 WL 1683736 *16 (E.D. Cal. 2005).  In California, a

6  "plaintiff alleging breach of warranty claims must stand in 'vertical privity' with the defendant."

7  (*Id.*) "The term vertical privity' refers to links the chain of distribution of goods. If the buyer and

8  seller occupy adjoining links in the chain, they are in vertical privity with each other." *Osborne*

9  *v. Subaru of America, Inc.*, 198 Cal.App.3d 646, 656 n. 6 (1988). "[T]here is no privity between

10  the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr*

11  *v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954).  In this case, Plaintiff alleges that she

12  purchased Dieter's Green Herbal Tea "at either a Price Chopper or Hen House store in the

13  Kansas City, Missouri area."  Complaint, ¶ 9.  She does not allege that she purchased the Tea

14  directly from Triple Leaf.  This is fatal to her claim for breach of implied warranty

15  of merchantability.  *Anunziato*, 402 F.Supp.2d at 1141 (no breach of implied warranty claim

16  where computer was bought at Best Buy and not directly from manufacturer).  Consequently,

17  Plaintiff has failed to state a cause of action for breach of implied warranty of merchantability

18  and the claim must be dismissed.

19          **F.**        **Plaintiff's Claims Are Preempted by Federal Law**

20          Even if Plaintiff had actually identified the challenged statements and each product at

21  issue and supported her claims with facts about reliance and injury, her claims would still merit

22  dismissal.  Federal law "comprehensively regulates food and beverage labeling." *Pom*

23  *Wonderful v. The Coca-Cola Co.*, 679 F.3d 1170, 1175 (9th Cir. 2012).  The FDCA authorizes

24  FDA to protect public health and ensure properly-labeled food. 21 U.S.C. § 393(b)(2)(A).  The

25  Nutrition Labeling and Education Act (NLEA) added an express preemption provision, section

26  343-1, prohibiting states from imposing labeling standards not identical to federal requirements

27  in specified areas.  Among the provisions granted preemptive effect are those governing health

28  and nutrient content labeling claims which Plaintiff seeks to enforce. *See* 21 U.S.C. §§ 343-1.

1   When a plaintiff asserts a claim seeking to "declare unlawful the very statement that

2   federal law permits and defines," that claim must be dismissed because it "would impose a

3   burden through state law that is not identical to the requirements" imposed by federal law.

4   *Carrea,* 475 Fed. Appx. at 115 (affirming 2011 U.S. Dist. LEXIS 6371).  Thus, "so long as [a

5   challenged] product meets the conditions imposed by the FDCA and accompanying regulations,

6   plaintiff's claims are expressly preempted by the FDCA and NLEA." *Yumul v. Smart Balance,*

7   *Inc.*, 2011 U.S. Dist. LEXIS 109952, *34 (C.D. Cal. March 14, 2011); *see also Brod v. Sioux*

8   *Honey Assoc.,* 895 F.Supp.2d 972, 979-81 (N.D. Cal. 2012) (preempting a state claim where a

9   product complies with the governing federal regulation).  Stated differently, state tort actions are

10  preempted where the challenged labeling is not contrary to the regulations promulgated under 21

11  U.S.C. section 343 (r), for example, which governs nutrient content claims.  *Turek v. General*

12  *Mills, Inc.,* 662 F.3d 423, 426-27 (7th Cir. 2011);  *Carrea v. Dreyer's Grand Ice Cream, Inc.,*

13  2011 U.S. Dist. LEXIS 6371, *12 (N.D. Cal. Jan. 10, 2011).

14   The product labels that Plaintiff challenges meet the federal regulations that occupy and

15  control the sphere of the regulatory framework at issue.  The challenged statements either do not

16  qualify as labeling statements under the FDCA, or they satisfy those regulations.  To the extent

17  that Plaintiff's claims seek to impose obligations that are not identical to those imposed by

18  federal regulation, and in light of the fact that the applicable regulations were promulgated under

19  21 U.S.C. § 343, Plaintiff's claims are expressly preempted by federal law and must be

20  dismissed.  *Carrea,* 475 Fed. Appx. at 115.  To the extent that Plaintiff seeks to impose state

21  laws which differ from federal regulations, those claims are impliedly preempted.

22   Plaintiff's claims are largely based on alleged regulatory violations of the FDCA.  *See,*

23  *e.g.,* Complaint ¶¶ 18-28, 73-81, 93, 129.  She seeks to enforce these regulatory provisions

24  through state consumer protection statutes, but this she cannot do.  A state law claim does not

25  exist where it is "in substance (even if not in form) a claim for violating the FDCA—that is,

26  when the state claim would not exist if the FDCA did not exist.'"  *Riley v. Cordis Corp.*, 625 F.

27  Supp. 2d 769, 777 (D. Minn. 2009) (citing *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341,

28  352-53 (2001)).  The Ninth Circuit recently addressed this issue in *Perez v. Nidek*, 711 F.3d

-17-

1109, 1120 (9th Cir. 2013). There, plaintiffs sued over the use of a medical device for unapproved hyperopic surgery, in violation of the FDCA. The court found that whether the use actually violated the FDCA depended on deciding interpretations of the statute, such as whether the lasers were "adulterated" within the meaning of the FDCA, but "[a]ll of these matters rest within the enforcement authority of the FDA, not this Court." *Id.* Thus, Plaintiff's claims were impliedly preempted.[4]

The same is true here. Plaintiff seeks to sue over alleged technical violations, asking this Court to decide, for example, whether the representations made on the Packaging comply with FDA requirements for structure/function claims. Complaint, ¶ 79. This administrative function cannot form the basis for a civil lawsuit. The Ninth Circuit has instructed that these claims may only proceed in a limited instance: "the plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted . . .), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted . . .)." *Perez*, 711 F.3d at 1120 (citing *In re Medtronic, Inc.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). In other words, her claim must be based on a preexisting state law duty – not the fine print of the federal code regulations. Plaintiff fails this test. (*See* Complaint, ¶ 27-28 [Plaintiff would not have purchased Dieter's Green Herbal Tea had she known it was not capable of being legally sold.]) Her claims are therefore preempted.

---

[4] Many courts agree: Plaintiffs cannot disguise a claim to enforce the FDCA as a state law claim to avoid Section 337(a)'s clear mandate. *See In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (plaintiffs may not use other laws to assert a private cause of action that is based on FDCA violations); *Loreto v. Procter & Gamble Co.*, 515 Fed. Appx. 576, 578 (6th Cir. 2013) (FDA's authority is "thwarted if savvy plaintiffs can label" their claim as a state law cause of action when it "in substance seeks to enforce the FDCA"); *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 U.S. Dist. LEXIS 106600, **41-42 (N.D. Cal. Oct. 5, 2010) (a plaintiff may not plead around a statute that indicates exclusive federal enforcement authority by bringing a claim under the UCL); *In re Schering-Plough Corp.*, 2009 U.S. Dist. LEXIS 58900, *47 (D.N.J. July 10, 2009) (plaintiffs may not "merely recite violations of the FDCA, for which there is no private cause of action"); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (same); *Verzani v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 107699, **8-9 (S.D.N.Y. Sept. 28, 2010) (plaintiff's allegations of FDCA violations "indicates that his true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive business practices"), *aff'd* at 432 Fed. Appx. 29 (2d Cir. 2011).

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PLAINTIFF'S COMPLAINT
Case No.: 3:14-1570-MMC

**G.     The Court Should Abstain or Stay the Case Under the Doctrine of Primary Jurisdiction**

Alternatively, the Court should dismiss or stay the action in deference to the FDA's primary jurisdiction over food labeling as recognized in *Pom*.[5]  The primary jurisdiction doctrine should apply because Congress has identified the FDA's special competence to resolve issues under the regulatory scheme of the FDCA.  *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).  There exists a national need to resolve labeling issues uniformly under the very statute created for that purpose, and under the close watch of FDA's administrative and technical expertise.  *See Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781-82 (9th Cir. 2002).

**H.     Plaintiff's Attempt to Extend this Case Beyond California Fails**

Plaintiff's Complaint also seeks to expand this case to include a nationwide putative class of consumers, or at least leaves open the possibility through specific allegations to this effect.  (Complaint ¶¶ 8, 103-104.)  But there is no support for Plaintiff's attempt to sue under California law on behalf of out-of-state putative class members who made out-of-state purchases of products made by an out-of-state company.

Plaintiff's claims on behalf of out-of-state putative class members fail because Plaintiff cannot overcome the presumption against extraterritorial application of California law.  Plaintiff sues only under state law.  The California Supreme Court has held, "However far the Legislature's power may theoretically extend, [courts] presume the Legislature did not intend a statute to be operative with respect to occurrences outside the state[.]"  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (internal punctuation omitted).  The "presumption against extraterritoriality applies to the UCL in full force" and Plaintiff's claims improperly attempt to

---

[5] Courts have relied on *Pom* to hold that food labeling claims are in the primary jurisdiction of a federal agency.  *Astiana v. Hain Celestial*, 905 F. Supp. 2d 1013 (N.D. Cal. 2012) (FDA);  *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, 2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012) (FDA and USDA);  *Taradejna v. Gen. Mills*, 909 F. Supp. 2d 1128 (D. Minn. 2012) (FDA);  *Chavez v. Nestlé USA, Inc.*, 2011 U.S. Dist. LEXIS 58731 (C.D. Cal. May 19, 2011) (FDA).  These rulings respect the expertise of the agencies and promote uniform decision making.

1    extend California law to non-residents.  *Id.* at 1207;  *see also In re Toyota Motor Corp.* 785 F.

2    Supp. 2d 883, 918 (C.D. Cal. 2011) (presumption against extraterritorial also applies to CLRA

3    and FAL claims).

4          Plaintiff has not pleaded any facts that would overcome the presumption, and therefore

5    the Court should dismiss all claims relating to non-California purchases.  *See In re Toyota,* 785

6    F. Supp. 2d at 917-18 (dismissing claims related to purchases made outside of California);

7    *Koehler v. Litehouse, Inc.,* No. CV-12-04055-SI, 2012 U.S. Dist. LEXIS 176971, *19 (N.D. Cal.

8    Dec. 13, 2012) (Illston, J.) (dismissing UCL, FAL, and CLRA claims because non-California

9    consumers "do not have the requisite contacts with California");  *cf. Mazza v. Honda Motor Co.,*

10   666 F.3d 581, 594 (9th Cir. 2012) ("each class member's . . . claim should be governed by the

11   consumer protection laws of the jurisdiction in which the transaction took place").

12         Indeed, an attempt to apply California law to out-of-state transactions raises

13   constitutional problems.[6]  Under *Sullivan,* giving extraterritorial effect to California law

14   "potentially implicates the due process clause of the United States Constitution (14th Amend.),

15   which places additional limitations on the extraterritorial application of state law."  51 Cal. 4th at

16   1207 n.9.  Plaintiff fails to show that Triple Leaf "has a 'significant contact or significant

17   aggregation of contacts' to the claims asserted by each member of the plaintiff class," such that

18   applying California law would be "arbitrary" and " unfair."  *See Red v. Kraft Foods,* 2011 U.S.

19   Dist. LEXIS 116965, **17-18 (C.D. Cal. Sept. 29, 2011) (citing *Phillips Petroleum Co. v. Shutts,*

20   472 U.S. 797, 821-22 (1985);  *Koehler,* 2012 U.S. Dist. LEXIS 176971 at *19 (dismissing

21   nationwide class claims because applying California law to claims of consumers who purchased

22   products outside California would "raise significant due process issues").  Therefore, these

23   allegations are improper and must be dismissed or stricken.

24   //

25

26   ---

     [6] Further, Plaintiff fails to plead her claims with respect to non-California purchases with the
     requisite particularity, and her nationwide claims should be dismissed under Rule 9(b).  *See*
27   *Gustafson v. BAC Home Loans Serv'g,* 2012 U.S. Dist. LEXIS 117493, **15-16 (C.D. Cal. Apr.
     12, 2012);  *Gross v. Symantec Corp.,* No. C-12-00154-CRB, 2012 U.S. Dist. LEXIS 107356,
28   **17-18 (N.D. Cal. July 31, 2012).

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STRIKE PLAINTIFF'S COMPLAINT
Case No.: 3:14-1570-MMC

## V.      CONCLUSION

Based on the foregoing, Triple Leaf respectfully requests that the Court dismiss the Complaint without leave to amend.  In the alternative, the Court should strike all allegations which extend beyond the logical and plausible scope of Plaintiff's claims.

Dated:  May 16, 2014                          GORDON & REES LLP


By:     /s/ Dion N. Cominos
        Dion N. Cominos
        Ryan B. Polk
        Attorneys for Defendant
        Triple Leaf Tea, Inc.

1

**CERTIFICATE OF SERVICE**

2

I, Dion N. Cominos, declare:

3

I am a citizen of the United States and employed in San Francisco, California.  I am over

4

the age of eighteen years and not a party to the within-entitled action.  My business address is

5

275 Battery Street, Suite 2000, San Francisco, CA 94111.

6

On the mentioned date below, I served a copy of the within document(s):

7

**DEFENDANT TRIPLE LEAF TEA, INC.'S MOTION TO DISMISS, OR IN THE
ALTERNATIVE, MOTION TO STRIKE PLAINTIFF'S COMPLAINT;**

8

9

**DEFENDANT TRIPLE LEAF TEA, INC.'S REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO
STRIKE PLAINTIFF'S COMPLAINT**

10

on all parties in this action by causing a true copy to be distributed as follows:

11

☒       BY ELECTRONIC SERVICE VIA PACER:  I caused such documents to be transmitted

12

via electronic mail to the stated parties via an electronic service known as PACER.

13

I declare under penalty of perjury under the laws of the State of California that the

14

foregoing is true and correct.

15

Executed on May 16, 2014, at San Francisco, California.

16

17

By:     _/s/ Dion N. Cominos_____

18

Dion N. Cominos

19

20

21

22

23

24

25

26

27

28