1

2

3

4

5

6

7      IN THE UNITED STATES DISTRICT COURT

8      FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   EUNICE JOHNSON,                          No. C-14-1570 MMC

11              Plaintiff,               **ORDER DENYING DEFENDANT'S**
                                          **MOTION TO DISMISS OR STRIKE**
12      v.

13   TRIPLE LEAF TEA INC.,

14              Defendant.
     _____/
15

16          Before the Court is defendant Triple Leaf Tea, Inc.'s "Motion to Dismiss, or in the

17   Alternative, Motion to Strike Plaintiff's Complaint," filed May 16, 2014.  Plaintiff Eunice

18   Johnson has filed opposition, to which defendant has replied.  Having read and considered

19   the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

20                                  **BACKGROUND**

21          Plaintiff, a California resident, alleges that while she was "in the Kansas City,

22   Missouri area," she purchased "for approximately $3.00" a product marketed by defendant,

23   specifically, "Dieter's Green," an herbal tea, and that she did so in reliance on assertedly

24   false and misleading statements on the packaging.  (See Compl. ¶¶ 7, 9, 21.)

25          First, plaintiff alleges that although Dieter's Green "contain[s] no weight loss

26   ingredients or fat burners" (see Compl. ¶ 17), the name Dieter's Green "misleads

27   consumers to believe [the] product has ingredients to help one diet or lose weight" (see

28
     _____
            [1]By order filed July 18, 2014, the Court took the matter under submission.

1  Compl. ¶ 53.a).

2      Second, plaintiff alleges that a statement on the front of the package, "Traditional

3  Herbal Support While Dieting" (see Compl. ¶¶ 12, 56), is deceptive because "Senna," the

4  "predominate ingredient," is "not effective in weight loss and may have an opposite effect

5  and cause bloating and cramping" (see Compl. ¶ 56).

6      Third, plaintiff alleges that another statement on the front of the package, "Helps

7  Promote Cleansing," is "misleading in that it makes the [tea] seem as though it has

8  ingredients that will help to flush the body of toxins, when in reality it is predominantly

9  comprised of two laxative ingredients" (see Compl. ¶ 57), specifically, "senna leaf" (see

10  Compl. ¶ 14) and "Chinese mallow, referred to by [d]efendant [on the package] as 'Whorled

11  mallow leaf'" (see Compl. ¶ 40).

12      Fourth, plaintiff alleges that a statement on the bottom of the package, "[t]he

13  Chinese system of herbology has been recorded in ancient texts which are studied and

14  employed even today," is misleading because "even if Senna and Chinese Mallow are

15  described in 'ancient texts,' their combination was not described for the purposes

16  [d]efendant is selling the [tea]."  (See Compl. ¶ 59.)

17      Lastly, plaintiff alleges the packaging is misleading because it "conceal[s] the

18  dangers of Senna use" (see Compl. ¶ 63), which "can actually thwart weight loss by

19  slowing the metabolism and causing chronic bloating and constipation" (see Compl. ¶ 16),[2]

20  and, in addition, "does not warn [consumers] against the dangers of Chinese mallow" (see

21  Compl. ¶ 68), "which may cause heart palpitations, fatigue and muscle spasms" (see

22  Compl. ¶ 66), as well as "significant drops in serum blood sugar levels" (see Compl. ¶ 67).

23      In sum, plaintiff alleges the above-referenced representations are false and

24

25      [2]As plaintiff acknowledges in the complaint, the "end panel of [Dieter's Green]"
   includes a warning as to some of the above-asserted side effects of senna.  (See Compl.
26  ¶ 63.)  Specifically, the packaging states: "NOTICE: This product contains Senna.  Read
   and follow directions carefully.  Do not use if you have or develop diabetes, loose stools, or
27  abdominal pain because Senna may worsen these conditions and be harmful to your
   health.  Consult your physician if you have frequent diarrhea or if you are pregnant,
28  nursing, take medication, or have a medical condition."  (See Compl. ¶ 62, Ex. 3.)

1    misleading because Dieter's Green "does not provide the advertised benefits but is, in fact,

2    a laxative" (see Compl. ¶ 22), such that "any weight lost by the user is temporary and

3    attributable to loss of fecal material" (see Compl. ¶ 78).

4         Based on said allegations, plaintiff brings five causes of action on her own behalf

5    and on behalf of a putative class.  In the First Cause of Action, plaintiff alleges the

6    challenged statements are misleading and thus violate the Consumers Legal Remedies Act

7    ("CLRA"), Cal. Civ. Code §§ 1750-1784.  In the Second Cause of Action, plaintiff alleges

8    the challenged statements are unlawful, unfair and fraudulent in violation of

9    § 17200 of the California Business & Professions Code.  In the Third Cause of Action,

10   plaintiff alleges the challenged statements constitute false advertising and thus violate

11   § 17500 of the Business & Professions Code.  In the Fourth and Fifth Causes of Action,

12   plaintiff alleges defendant breached, respectively, express and implied warranties it

13   assertedly made on the packaging.

14                                **LEGAL STANDARD**

15        Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based

16   on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

17   cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

18   1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim

19   showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S.

20   544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by

21   a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.

22   Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief

23   requires more than labels and conclusions, and a formulaic recitation of the elements of a

24   cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

25        In analyzing a motion to dismiss, a district court must accept as true all material

26   allegations in the complaint, and construe them in the light most favorable to the

27   nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

28   survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

3

as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (quoting Twombly, 550 U.S. at 570).   "Factual allegations must be enough

to raise a right to relief above the speculative level[.]"   Twombly, 550 U.S. at 555.   Courts

"are not bound to accept as true a legal conclusion couched as a factual allegation."   See

Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### DISCUSSION

Defendant argues plaintiff lacks standing to assert the claims in her complaint and

fails to state a claim upon which relief can be granted, and, consequently, that the

complaint must be dismissed or, alternatively, that certain allegations should be stricken.

**A.   Article III Standing**

To establish "Article III standing," a plaintiff must have "suffered an injury in fact" that

is "fairly traceable to the challenged conduct" and is "likely to be redressed by a favorable

decision."   See Mazza v. American Honda Motor Co., 666 F.3d 581, 594 (9th Cir. 2012)

(internal quotation and citation omitted).

**1.   Plaintiff's Individual Claims**

Defendant argues plaintiff lacks a cognizable injury in fact and, consequently, lacks

standing to assert her individual claims.   Although defendant acknowledges plaintiff alleges

she purchased Dieter's Green in reliance on the challenged statements, defendant

contends "simply purchasing" the product is not a cognizable injury in fact.   (See Def.'s

Mot. at 6:10-11.)   The Court disagrees.

Where a plaintiff, in reliance on a defendant's assertedly misleading statements

made in connection with a product, "bought [the product] when [she] otherwise would not

have done so," the plaintiff has an "injury in fact" for purposes of Article III.   See Mazza,

666 F.3d at 595.   Here, plaintiff's allegations are sufficient, given plaintiff alleges that she

"was seeking a product that would help her lose weight and support her diet efforts" (see

Compl. ¶ 25), that she "purchased [Dieter's Green] in reliance on [the] packaging claims"

(see Compl. ¶ 9) and that she "would not have purchased [Dieter's Green], but for the

[defendant's] labeling claims" (see Compl. ¶ 23).

4

1

**2. Plaintiff's Claims on Behalf of Putative Class Members**

2     Plaintiff seeks to proceed on behalf of a class consisting of persons who purchased

3 Dieter's Green, and, in addition, on behalf of persons who purchased two other teas sold by

4 defendant, specifically, "Ultra Slim" and "Super Slimming."  (See Compl. ¶ 5 and Ex. 1.)

5     Where a class action complaint encompasses both a product the plaintiff purchased

6 and a product she did not purchase, the plaintiff has standing to proceed with claims on

7 behalf of class members who purchased the latter if "there is sufficient similarity between

8 the products purchased and not purchased."  See Astiana v. Dreyer's Grand Ice Cream,

9 Inc., 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012) (collecting cases).  Defendant

10 argues plaintiff fails to allege facts to support a finding that Dieter's Green is sufficiently

11 similar to defendant's Ultra Slim and Super Slimming products.  The Court disagrees.

12     Plaintiff alleges the assertedly false and misleading statements on the packaging for

13 the Dieter's Green product are also found on the packaging for the Ultra Slim and Super

14 Slimming products (see Compl. ¶¶ 56, 57, 59), each of which, according to the complaint,

15 contains senna leaf and Chinese mallow (see Compl. ¶¶ 39-40).  Although, as defendant

16 notes, the three products are alleged to contain differing ingredients, e.g., Dieter's Green is

17 the only one of the three teas containing "green tea leaf" and Ultra Slim is the only one of

18 the three teas containing "loquat leaf" (see Compl. Ex. 3), such differences, in light of

19 plaintiff's theory as to why the statements on the packaging of the three products are false

20 and misleading, do not warrant dismissal of the class claims at the pleading stage.  See,

21 e.g., Astiana, 2012 WL 2990766, at *13 (holding, in action challenging "all natural"

22 statements on labels of various ice cream products, only some of which having been

23 purchased by named plaintiffs, fact that products had "different ingredients [was] not

24 dispositive [at the pleading stage] as [p]laintiffs [were] challenging the same basic

25 mislabeling practice across different product flavors").

26     **3. Conclusion: Article III Standing**

27     Accordingly, plaintiff's individual and class claims are not subject to dismissal at the

28 pleading stage for lack of Article III standing.

**B. First, Second, and Third Causes of Action: Statutory Standing**

Defendant argues plaintiff fails to allege sufficient facts to plead injury and reliance as required for claims brought under the CLRA, § 17200, and § 17500.

Under California law, a person who has "suffer[ed] any damage" as a result of the defendant's challenged conduct has standing to bring a claim under the CLRA, see Hinojos v. Kohl's Corp., 718 F.3d 1098, 1107 (9th Cir. 2013) (internal quotation and citation omitted), and a person who has "suffered injury in fact" and has "lost money or property" as a result of the defendant's challenged conduct has standing to bring a claim under § 17200 and § 17500, see id. at 1103-04 (internal quotation and citation omitted).  Where, as here, the conduct challenged under the CLRA, § 17200, or § 17500 consists of assertedly false advertising, the statutory standing requirements are satisfied if the plaintiff establishes she "would not have made the purchase but for the misrepresentation."  See id. at 1107-08.  As discussed above, plaintiff alleges she purchased Dieter's Green in reliance on defendant's assertedly false statements and would not have purchased the product but for those statements.  (See Compl. ¶¶ 9, 23, 25.)

Accordingly, plaintiff's claims are not subject to dismissal at the pleading stage for lack of statutory standing.

**C. First, Second, and Third Causes of Action: Failure to State a Claim**

Defendant argues plaintiff fails to state a claim under the CLRA, § 17200, or § 17500, for the asserted reason that the challenged statements are not the type of statements upon which a reasonable consumer could rely, but, rather, constitute "non-actionable puffery."  (See Def.'s Mot. at 12:9.)

Plaintiff's claims under the CLRA, § 17200, and § 17500 "are governed by the reasonable consumer test," under which a plaintiff must show that "members of the public are likely to be deceived."  See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal citation and quotation omitted).  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  Id. Where the challenged statements constitute "puffery," however, dismissal as a matter of

law is appropriate.  See Cook, Perkiss & Liehe, Inc. v. Northern California Collection

Service, Inc., 911 F.2d 242, 246 (9th Cir. 1990) (affirming dismissal of false advertising

claim based on statement defendants were "the low cost commercial collection experts";

holding, as a matter of law, reasonable consumer would not interpret such statement as

"factual claim").

Here, plaintiff alleges the challenged statements are likely to deceive a reasonable

consumer into believing Dieter's Green is effective for weight loss and cleansing purposes,

when, according to plaintiff, Dieter's Green has no such effects and poses undisclosed

dangers to consumers.  The Court finds the statements challenged here are not merely

"general assertions of superiority" and are more properly characterized as "factual

[ ]representations" rather than puffery.  See Williams, 552 F.3d at 939 n.3.  Further, to the

extent defendant argues that reasonable consumers are not likely to interpret the

challenged statements in the manner alleged by plaintiff, the Court declines to make such a

finding at the pleading stage.  See Augustine v. Natrol Products, Inc., 2010 WL 2506284, at

*4 (S.D. Cal. May 15, 2014) (declining to dismiss false advertising claim at pleading stage,

where plaintiff alleged statements made on product label of "Laci Le Beau Super Dieter's

Tea" were likely to deceive reasonable consumer into believing product was effective for

weight loss; holding, "it is plausible that the statements on the [tea's] packaging could

deceive a reasonable consumer" and that "[d]efendant's arguments to the contrary [were]

more suitable to the summary judgment stage, with the benefit of a more developed

record").

Accordingly, the First, Second, and Third Causes of Action are not subject to

dismissal for failure to state a claim.

**D.  Fourth Cause of Action:  Failure to State a Claim**

Plaintiff's Fourth Cause of Action alleges a claim for breach of express warranty.

Under California law, "[a]ny affirmation of fact or promise made by the seller to the

buyer which relates to the goods and becomes part of the basis of the bargain creates an

express warranty that the goods shall conform to the affirmation or promise," see Cal. Com.

Code § 2313(1)(a), and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description," see Cal. Com. Code § 2313(1)(b).  To state a claim for breach of express warranty, the plaintiff must allege "the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury."  See Williams v. Beechnut Nutrition Corp., 185 Cal. App. 3d 135, 142 (1986).  Here, plaintiff alleges the statements she has challenged in her CLRA, § 17200, and § 17500 claims constitute warranties, that she relied on those statements in deciding to purchase the product, and that she was injured in that she purchased the product.  (See Compl. ¶¶ 9, 21, 26, 34, 148-151.)

Defendant argues plaintiff nonetheless fails to state a claim because, defendant contends, the challenged statements constitute "generalized, vague and unspecific assertions, and are therefore not actionable."  (See Def.'s Mot. at 15:23-24.)  In support thereof, defendant points out that a breach of express warranty claim cannot be based on "puffery."  See, e.g., Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013) (dismissing breach of express warranty claim based on label describing soda as "premium soda"; holding "premium" constitutes "mere puffery," as term has "no concrete, discernable meaning in the diet soda context").  Here, however, as discussed above, the challenged statements do not constitute puffery.

Accordingly, the Fourth Cause of Action is not subject to dismissal for failure to state a claim.

**E. Fifth Cause of Action:  Failure to State a Claim**

Plaintiff's Fifth Cause of Action alleges a claim for breach of implied warranty of merchantability.

Under California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale."  See Cal. Com. Code § 2314(1).  The term "merchantable," as used in § 2314, has several meanings, including that "the product must conform to the promises or affirmations of fact made on the container or label."  See Cal. Com. Code

§ 2314(2)(f).  Here, plaintiff alleges she purchased Dieter's Green in reliance on representations, contained on the packaging, that the product was effective for weight loss. (See Compl. ¶¶ 9, 21, 26, 34, 152-57.)

Defendant argues plaintiff fails to state a claim because a plaintiff may only allege a claim for breach of implied warranty of merchantability against a defendant in privity with the plaintiff, and, in this instance, plaintiff alleges she purchased Dieter's Green from a retailer.  As the Ninth Circuit has explained, however, although the general rule is that a plaintiff alleging breach of an implied warranty "must stand in vertical privity with the defendant," an exception exists "when the plaintiff relies on written labels or advertisements of a manufacturer."  See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (applying California law).  Here, as noted, plaintiff's implied warranty claim is based on her reliance on statements on the packaging for Dieter's Green.  Consequently, plaintiff need not allege privity.  See id.

Accordingly, the Fifth Cause of Action is not subject to dismissal for failure to state a claim.

**F. Affirmative Defense:  Preemption**

Defendant argues plaintiffs' claims are preempted by 21 U.S.C. § 343-1.

Section 343-1 provides that where the Food and Drug Administration ("FDA") has promulgated a regulation governing the manner in which a food manufacturer must label a product, no state may "'directly or indirectly establish'" a requirement that differs from the federal requirement.  See Lilly v. ConAgra Foods, Inc., 743 F.3d 662, 664-65 (9th Cir. 2014) (quoting 21 U.S.C. § 343-1(a)).

Here, defendant argues, "[t]he product labels that [p]laintiff challenges meet the federal regulations that occupy and control the sphere of the regulatory framework at issue."  (See Def.'s Mot. at 17:14-15.)  As plaintiff points out, however, defendant fails to identify any federal regulation that governs the representations plaintiff is challenging.  Cf. Viggiano, 944 F. Supp. 2d at 881, 888-90 (finding preemption of claim alleging label on diet soda falsely stated soda contained "all natural flavors," where label was in conformity with

21 C.F.R. § 101.22(i)(1), a regulation "that expressly govern[ed] the use of a 'natural flavor'

label"). In the absence of a showing that a federal regulation governs the type of labeling

challenged here by plaintiff, defendant has not shown plaintiff's claims are preempted by

§ 343-1. See Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1087 n.2 (2011) (holding

"preemption is an affirmative defense upon which the defendants bear the burden of proof")

(internal quotation and citation omitted).

Accordingly, plaintiff's claims are not subject to dismissal on grounds of preemption

under § 343-1.

**G. Affirmative Defense:  Primary Jurisdiction**

Defendant alternatively argues the Court should "abstain or stay the case under the

doctrine of primary jurisdiction." (See Def.'s Mot. at 19:1-2.)

The "doctrine of primary jurisdiction" is a "prudential doctrine under which courts

may, under appropriate circumstances, determine that the initial decisionmaking

responsibility should be performed by the relevant agency rather than the courts." See

Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002).

The doctrine is "properly invoked when a claim is cognizable in federal court but requires

resolution of an issue of first impression, or of a particularly complicated issue that

Congress has committed to a regulatory agency." See id. (internal quotation and citation

omitted). The doctrine does not require that "all claims within an agency's purview" be

decided by the agency, "[n]or is it intended to secure expert advice for the courts from

regulatory agencies every time a court is presented with an issue conceivably within the

agency's ambit." See id. (internal quotation and citation omitted). In determining whether

to exercise its discretion to invoke the doctrine, a district court considers "such factors as

(1) the need to resolve an issue that (2) has been placed by Congress within the

jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute

that subjects an industry or activity to a comprehensive regulatory authority that

(4) requires expertise or uniformity in administration." See id. at 781.

//

1   Here, defendant notes that the FDA administers the Food, Drug, and Cosmetic Act,

2   and, in support of its argument that the Court should invoke the doctrine of primary

3   jurisdiction with respect to plaintiff's claims, states, in full, as follows:  "There exists a

4   national need to resolve labeling issues uniformly under the very statute created for that

5   purpose, and under the close watch of the FDA's administrative and technical expertise."

6   (See Def.'s Mot. at 19:7-10.)  The Court finds defendant's argument, in the absence of any

7   further showing, insufficient to demonstrate the propriety of the Court's abstaining from

8   deciding plaintiff's claims in order to afford the FDA the ability to first do so, particularly

9   given there is no showing or suggestion that the FDA has expertise in analyzing false

10  advertising claims.  See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 296-97, 305-06

11  (1976) (holding, where plaintiff alleged airline made fraudulent representation with respect

12  to its overbooking policy, doctrine of primary jurisdiction not properly invoked even though

13  Civil Aeronautics Board had statutory authority to investigate whether airlines engage in

14  deceptive practices; explaining, "standards to be applied in an action for fraudulent

15  misrepresentation are within the conventional competence of the courts, and the judgment

16  of a technically expert body is not likely to be helpful in the application of these standards to

17  the facts of this case").

18  Accordingly, the Court declines, on the present record, to abstain from deciding or to

19  stay the instant case under the doctrine of primary jurisdiction.

20  **H.  Extraterritorial Application of California Law**

21  Plaintiff seeks to proceed on behalf of a class consisting of persons who reside

22  anywhere in the United States and purchased Dieter's Green, Ultra Slim or Super

23  Slimming teas anywhere in the United States (see Compl. ¶¶ 8, 11, 103), or, in the

24  alternative, on behalf of persons who purchased said products in California or in "states

25  with laws similar to California" (see Compl. ¶ 103).  Defendant argues that the scope of

26  such proposed class definitions should be limited, because, defendant contends, claims

27  arising under California law cannot be asserted "on behalf of out-of-state putative class

28  members who made out-of-state purchases of products made by an out-of-state company."

11

1   (See Def.'s Mot. at 19:14-16.)

2       To the extent defendant seeks an order limiting the class definition on the asserted

3   ground that it is "an out-of-state company" (see id.), the Court finds defendant's argument

4   premature at the pleading stage.  Although courts have held California law has no

5   extraterritorial application with respect to a claim by a nonresident class member who

6   incurred injury caused by actions taken by a nonresident defendant outside California, see,

7   e.g., Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214, 222-24 (1999)

8   (holding California law did not apply to class members who sought relief under § 17200 for

9   injuries "caused by conduct occurring outside of California's borders, by defendants whose

10  headquarters and principal places of operations [were] outside of California"), here plaintiff

11  alleges defendant is "a California corporation with its principal place of business located at

12  20 Buena Vista Road, South San Francisco, California" (see Compl. ¶ 4), an allegation the

13  Court, at this stage of the proceedings, must accept as true, see NL Indus., 792 F.2d at

14  898.  Given said allegation, although plaintiff has not expressly alleged the packaging

15  statements that prompted her Kansas City purchase emanated in some manner from

16  California, it would not be unreasonable to expect such element could be shown, and,

17  indeed, defendant does not contend plaintiff cannot seek relief under California law.  See,

18  e.g., Cal. Bus. & Prof. Code § 17500 (providing prohibition against making "untrue or

19  misleading" statements applies to statements made "from this state before the public in any

20  state").

21      To the extent defendant argues California law, even assuming defendant's

22  California residency, does not apply to out-of-state purchases by nonresidents, the Court

23  likewise finds such argument premature.  Where "the laws of multiple states could

24  conceivably apply to the same claim," see Cotter v. Lyft, Inc., 2014 WL 3884416, at *1

25  (N.D. Cal. August 7, 2014), the determination as to the choice of state law applicable to

26  such claims is dependent on the facts of the particular case and thus typically is addressed

27  in the context of a motion for class certification, see, e.g., J.P. Morgan & Co. v. Superior

28  Court, 113 Cal. App. 4th 195, 221-22 (2004) (holding trial court erred in granting motion to

certify nationwide class, where defendants were "not headquartered in California" and had

not "made misrepresentations emanating from [California]"; explaining that where

assertedly wrongful conduct is not "conducted to a significant extent" in California, trial

court must "weigh the interests of those states [in which nonresident class members reside]

against the interest of California in resolving the classwide claims of nonresident class

members"); Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 613-16 (1987) (holding

trial court erred in denying motion to certify nationwide class without conducting choice of

law analysis, where "alleged fraudulent misrepresentations forming the basis of the claim of

every [class member] emanated from California"; observing that "California's more

favorable laws may properly apply to benefit nonresident plaintiffs when their home states

have no identifiable interest in denying such persons full recovery").[3]

Accordingly, the Court declines, at this stage of the proceedings, to strike language

from plaintiff's proposed class definitions.

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss or strike is hereby

DENIED.

**IT IS SO ORDERED.**

Dated:  September 23, 2014

_____
MAXINE M. CHESNEY
United States District Judge

---

[3]Where, as here, a district court's jurisdiction rests on diversity of citizenship, the district court applies the forum state's "conflict of laws rules."  See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) (holding district court sitting in Delaware erred in determining New York law governed state law claim without first considering whether, under Delaware's choice of law rules, New York law would apply).