**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 546-6665

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUNICE JOHNSON, individually, on behalf of all others similarly situated, and the general public, | CASE NO.: 3:14-cv-01570 MMC<br>CLASS ACTION |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR AN ORDER (1) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (2) CERTIFYING SETTLEMENT CLASS, (3) APPOINTING CLASS REPRESENTATIVES AND CLASS COUNSEL, (4) APPROVING NOTICE PLAN, AND (5) SETTING FINAL APPROVAL HEARING** |
| v. | |
| TRIPLE LEAF TEA INC.; | |
| Defendant. | **[Hearing Date Set by the Court in Dkt. No. 45]** |

Judge:          Hon. Maxine M. Chesney
Date/Time:      June 19, 2015 at 9:00 a.m.
Courtroom:      7 (19th Floor)

Complaint Filed:   April 4, 2014
Trial Date:        Not Assigned

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.     FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

II.    SUMMARY OF THE SETTLEMENT ................................................................. 5

   A.  Injunctive Relief ................................................................................................ 5

   B.  Monetary Relief ................................................................................................ 6

   C.  Costs of Notice and Administration, Attorneys' Fees, and Incentive Award ........................... 7

III.   THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL ..... 8

   A.  Standard of Review .......................................................................................... 8

   B.  The Court Should Certify the Class for Settlement Purposes ................................... 9

      1.  Numerosity .................................................................................................. 9

      2.  Commonality ............................................................................................... 10

      3.  Typicality ................................................................................................... 11

      4.  Adequacy of Representation ........................................................................... 11

      5.  The Proposed Class Meets the Requirements of Rule 23(b)(2) ............................ 13

      6.  The Proposed Class Meets the Requirements of Rule 23(b)(3) ............................ 14

   C.  The Court Should Grant Preliminary Approval of the Proposed Settlement ...................... 15

      1.  The Settlement was Reached at Arms' Length ................................................... 15

      2.  The Settlement has no Obvious Deficiencies and does not Improperly Grant Preferential Treatment to the Class Representative or Segments of the Class ................................................. 16

      3.  The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate ................ 16

        i.  The Strength of Plaintiff's Case .............................................................. 17

        ii.  Complexity, Expense, and Probable Length of Litigation ............................. 17

        iii.  The Risks of Maintaining Class Action Status Throughout Trial ..................... 18

        iv.  Amount of Recovery ............................................................................ 18

        v.  The Extent of Discovery Completed and the Stage of the Proceedings ............ 19

        vi.  The Experience and Views of Counsel ..................................................... 20

i

vii.  The Reaction of the Class Members to the Proposed Settlement ..................................... 20

D.   The Proposed Form of Class Notice and Notice Plan Satisfy the Requirements of Rule 23... 20

E.   The Proposed Timeline for Events Should be Adopted ........................................................... 22

IV.   CONCLUSION .............................................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Adams v. Inter-Con Sec. Sys., Inc.*,
  No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ............................................. 15

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402 (5th Cir. 1998) ................................................................................................................... 13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231 (1997) .................................................................................................. 9

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ....................................................................................................... 20

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ..................................................................................................................... 8

*City P'ship Co. v. Jones Intercable, Inc.*,
  213 F.R.D. 576 (D. Colo. 2002) ............................................................................................................... 9

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ................................................................................................................ 20

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ......................................................................................................... 18

*Delarosa v. Boiron, Inc.*,
  275 F.R.D. 582 (C.D. Cal. 2011) ..................................................................................................... 10, 11

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) ................................................................................................................................... 15

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
  89 F.R.D. 87 (S.D.N.Y. 1981) ................................................................................................................ 14

*Gallucci v. Boiron, Inc.*,
  No. 11CV2039 JAH NLS, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) .................................... 11

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................................................... 10, 11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 8, 14, 17, 18

*Harris v. Palm Springs Alpine Estates*,
  329 F.2d 909 (9th Cir. 1964) ................................................................................................................... 10

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
  Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) .................. 10

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ................................................................................................................... 16

*In re Ferrero Litig.*,
  No. 11-CV-205 H(CAB), 2011 WL 5557407 (S.D. Cal. Nov. 14, 2011) .................................... 11

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................................................................................... 15

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..................15

*In re Live Concert Antitrust Litig.*,
  247 F.R.D. 98 (C.D. Cal. 2007) ..................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).....................................................................19

*In re Nvidia Derivs. Litig.*,
  No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)..................17

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................18

*In re Static Random Access Antitrust Litig.*,
  No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ...........................9

*In re Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (Ct. App. 2010) ........................................................14

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008).....................................................................8

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .........................................................9

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..........................................................................6, 13

*Jaffe v. Morgan Stanley & Co.*,
  No. C 06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008)...................................19

*Knight v. Red Door Salons, Inc.*,
  No. 08-1520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)......................................................................19

*Lobatz v. U.S. W. Cellular, Inc.*,
  222 F.3d 1142 (9th Cir. 2000)......................................................................18

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982).......................................................................8

*Probe v. State Teachers' Ret. Sys.*,
  780 F.2d 776 (9th Cir. 1986).......................................................................13

*Quintero v. Mulberry Thai Silks, Inc.*,
  No. C 08-02294 MHP, 2008 WL 4666395 (N.D. Cal. Oct. 21, 2008) ..............................10

*Riker v. Gibbons*,
  No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 27, 2010)..................19

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009).......................................................................18

*Taifa v. Bayh*,
  846 F. Supp. 723 (N.D. Ind. 1994)..................................................................19

*True v. Am. Honda Motor Co.*,

iv

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

749 F. Supp. 2d 1052 (C.D. Cal. 2010)......................................................................... 14, 15

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009)........................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ................................................................................... 10, 11, 13

*White v. Experian Info. Solutions, Inc.*,
   803 F. Supp. 2d 1086 (2011)......................................................................................... 19

*Wiener v. Dannon Co., Inc.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ................................................................................. 14

*Zinser v. Accufix Research Inst.*,
   253 F.3d 1180 (9th Cir. 2001) ...................................................................................... 13

## Statutes

21 C.F.R. § 1.1 ..................................................................................................................... 4

21 U.S.C. § 301 .................................................................................................................... 4

Cal. Bus. & Prof. Code § 17200 ................................................................................... 1, 6

Cal. Bus. & Prof. Code § 17500 ................................................................................... 1, 6

Cal. Civ. Code § 1750 ................................................................................................... 1, 14

Cal. Civ. Code § 1782 ........................................................................................................ 2

Cal. Health & Safety Code § 109875 ............................................................................... 4

## Rules

Fed. R. Civ. P. 11 ................................................................................................................ 5

Fed. R. Civ. P. 23(a) ........................................................................................................... 9

Fed. R. Civ. P. 23(a)(1) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 12

Fed. R. Civ. P. 23(b)(2) .................................................................................................... 13

Fed. R. Civ. P. 23(b)(3) .................................................................................................... 14

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 20

Fed. R. Civ. P. 23(e) ......................................................................................................... 16

Fed. R. Civ. P. 23(g)(1) .................................................................................................... 12

v

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................ 12

Fed. R. Civ. P. 23(h) ........................................................................................ 18

**<u>Other Authorities</u>**

7A C.A. Wright, A.R. Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986)......... 14

Manual for Complex Litig., § 21.632 .............................................................. 20

Moore's Fed. Prac. § 23.165[3] (3d ed. 2005) .................................................. 8

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570

JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## INTRODUCTION

Pursuant to the Court's Order on March 20, 2015 [Dkt. No. 45], a hearing on Plaintiff's Motion for Preliminary Approval has been scheduled for June 19, 2015 at 9:00 a.m. in Department 7 (19th floor) of the above-entitled court.  Plaintiff Eunice Johnson and Defendant Triple Leaf Tea, Inc. respectfully and jointly hereby move for an order: (1) Granting Preliminary Approval of Class Action Settlement; (2) Certifying a Settlement Class; (3) Appointing Plaintiff Class Representative and Plaintiff's Attorney as Class Counsel; (4) Approving the Notice Plan; and (5) Setting the Final Approval Hearing and Schedule.  This joint motion is based on this Notice of Motion and Motion; Declaration of Ronald A. Marron and all exhibits attached thereto ("Marron Decl."); Declaration of Eunice Johnson ("Johnson Decl."); Declaration of Ryan B. Polk ("Polk Decl."); Redacted and Unredacted Declaration of Vincent Lam ("Lam Decl."); the Memorandum of Points and Authorities filed concurrently herewith; the record on file and all proceedings had in this matter to date; and all further evidence and argument submitted in support of or against the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Eunice Johnson ("Plaintiff" or "Ms. Johnson") brought this consumer protection class action lawsuit on behalf of herself, all others similarly situated, and the general public against Defendant Triple Leaf Tea, Inc. ("Defendant" or "Triple Leaf") regarding its weight loss teas sold as "Dieter's Green" tea, "Ultra Slim" tea, and "Super Slimming" tea (the "Products").  Plaintiff alleges Triple Leaf's representations and advertising regarding the characteristics, benefits, and abilities of the Products are false and misleading, violating California's Consumer Legal Remedies Act (["CLRA"] Cal. Civ. Code §§ 1750, *et seq.*), California's Unfair Competition Law (["UCL"] Cal. Bus. & Prof. Code §§ 17200 *et seq.*), California's False Advertising Law (["FAL"] Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and constituting a breach of express and implied warranties.  *See* Dkt. No. 1 (Compl.) ¶¶ 116-158; Marron Decl. ¶ 4.

On February 21, 2014, Plaintiff Eunice Johnson, through her attorney of record, sent a CLRA Letter to Triple Leaf via certified mail, notifying Triple Leaf of Plaintiff's claims that the advertising of the Products was false and deceptive, pursuant to the requirements of Cal. Civ. Code § 1782.  Dkt.

1

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

No. 1, Ex. 6; Marron Decl. ¶ 3; Polk Decl. ¶ 3. Triple Tea, through its attorneys of record, responded to Plaintiff's CLRA notice letter on March 26, 2014, denying all of Plaintiff's allegations as factually and legally without merit and reserving all of its right and remedies should Plaintiff file suit. *See* Marron Decl. ¶ 3; Polk Decl. ¶ 3.

On April 4, 2014, Plaintiff filed suit against Defendant in the United States District Court for the Northern District of California. *See* Dkt. 1; Marron Decl. at ¶ 4. Although the initial Case Management Conference was originally scheduled for July 28, 2014, Defendant filed a Motion to Dismiss that suspended the conference. Marron Decl. ¶ 4; *see also* Dkt. 27. The Court ruled on Defendant's Motion to Dismiss on September 23, 2014, denying Defendant's Motion in its entirety. Marron Decl. ¶ 4; *see* Dkt. 33. The Parties eventually held their Case Management Conference before Magistrate Judge Maxine Chesney on October 31, 2014. Marron Decl. ¶ 4; Polk Decl. ¶ 4; *see* Dkt. 41.

At the Case Management Conference, the Parties, through their counsel of record, thoroughly discussed each contention identified in the Parties' respective statements. Marron Decl. ¶ 5; Polk Decl. ¶ 4. The Parties agreed to private mediation that the Court ordered to be conducted within 120 days of the conference. Marron Decl. ¶ 5; Polk Decl. ¶ 4; *see* Dkt. No. 41. Immediately following the conference, Plaintiff personally served on Defendant Plaintiff's First Set of Interrogatories, Request for Production, and Request for Admissions. Marron Decl. ¶ 5.

The Parties disagreed, however, on the scope and extent of discovery. *Id.* Defendant's counsel resisted discovery pending mediation; however, Plaintiff explained that it could not undertake due diligence in evaluating the case without first obtaining such discovery, and that in order for any meaningful settlement discussions to take place, Plaintiff would need sufficient information. *Id.* An important issue raised by Defendant during the conference was its financial position. *Id.* The parties agreed to meet and confer on the possibility of Plaintiff conducting narrow discovery needed to conduct a meaningful mediation.

On November 25, 2014, Plaintiff sent Defendant an email identifying the targeted discovery questions in preparation for mediation. Marron Decl., ¶ 6; Polk. Decl. ¶ 5. These questions requested information concerning Defendant's sales information, operating costs, and profits and losses. *Id.*

2

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

On February 3, 2015, attorneys from Plaintiff's counsel and Triple Leaf's counsel attended an all-day mediation before the Honorable Ronald M. Sabraw (Ret.) of JAMS. Marron Decl. ¶ 7; Polk Decl. ¶ 6. Representatives from Triple Leaf attended the mediation and Plaintiff was on telephonic standby. *Id.* Before the mediation occurred, Plaintiff's counsel engaged in pre-mediation conference calls with Ms. Johnson. *Id.* Following the mediation, the Parties managed to establish a framework for settlement, but still needed to work out the material terms and details of a final memorialized agreement. Marron Decl. ¶ 8; Polk Decl. ¶ 6; *see also* Dkt. No. 44 at ¶ 12. The Parties diligently negotiated over the course of February through May 2015 to resolve those differences, ultimately leading to the formal Settlement Agreement for which the Parties now seek preliminary approval. Marron Decl. ¶ 8 and Ex. 1 (Settlement Agreement); Polk Decl. ¶ 7; *see also* Dkt. No. 44 at ¶ 12. Attorneys for Plaintiff's counsel performed a detailed review and approval of precise labeling claims for all of the packages of the Products, throughout the pendency of this case. Marron Decl. ¶ 9. No trial date has been set.

The Settlement Agreement is the product of vigorous, adversarial, and competent representation of the Parties and substantive negotiations throughout the pendency of this litigation. *See* Marron Decl. ¶¶ 3-12; Polk Decl. ¶ 7. The parties began negotiations in earnest shortly after the February 2014 CLRA letters were sent. Marron Decl. ¶¶ 3-8. The Parties subsequently agreed to attend private mediation, and the settlement terms were reached with the assistance of an independent, impartial mediator, the Ronald M. Sabraw (Ret.) of JAMS, as well as through the assistance of Senior District Judge Chesney by encouraging mediation at the Case Management Conference. *Id.* at ¶ 7; Polk Decl. ¶¶ 4, 6; *see also* Dkt. No. 11.

For the purposes of settlement, Triple Leaf produced and Plaintiff reviewed substantial documentary evidence, including profit and loss statements and financial statements for 2010 through 2014, plus gross and net sales for each of the Products referenced in the complaint. *See* Marron Decl. ¶ 6. Plaintiff's counsel exercised due diligence to confirm the adequacy, reasonableness, and fairness of the settlement, both before and after mediation. Marron Decl. ¶ 9. Plaintiff's counsel also conducted a detailed and comprehensive review of FDA guidance documents regarding dietary supplements; the Food, Drug and Cosmetic Act (located at 21 U.S.C. §§ 301, *et seq.*) and its implementing regulations

3

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(located at 21 C.F.R. §§ 1.1, *et seq.*) (collectively, "FDCA"); the FDCA's numerous changes over the years; Federal Trade Commission advertising standards and their applicability to the Products' labeling claims at issue here; and the California Sherman Food, Drug and Cosmetic Law (Cal. Health & Safety Code §§ 109875, *et seq.*). *See* Dkt. No. 1; Marron Decl. ¶ 10.

The Parties also engaged in lengthy analysis of the laws applicable to the labeling claims here, with Defendant's counsel arguing the labeling of the Products fully complied with the law, and Plaintiff's counsel setting forth detailed factual and legal analysis why they believed the claims were not lawful or were false and deceptive. *See* Marron Decl. ¶¶ 3-10. When settlement talks continued to snag on certain key provisions, Plaintiff's counsel pushed for additional discovery and both parties prepared their claims and defenses in this action. *Id.* at ¶ 11.

Plaintiff's counsel believes Plaintiff could make a strong showing of why the Products' packing claims were misleading or unlawful. Based on diligent effort, Plaintiff's counsel was aware of the attendant strengths, risks, and uncertainties of Plaintiff's claims, and Defendant's defenses, during the course of negotiations. Marron Decl. ¶ 11.

Defendant, on the other hand, vigorously denies any wrongdoing or liability, and contends that it would be wholly successful in defeating Plaintiff's claims at or before trial. Polk Decl. ¶ 9. At trial or before, Triple Leaf would argue that the Products are properly labeled under the FDCA and Sherman Law, and that their labeling and marketing is not false or misleading. Defendant also would argue, among other things, that Plaintiff cannot prove that class action is a superior resolution to Plaintiff's claims.

Despite the vigorous opposition on both sides, the Parties appreciate the costs and uncertainty attendant to any litigation, and have agreed to a proposed settlement agreement. *See* Marron Decl., Ex. 1.[1] Plaintiff's counsel agreed to settle the action pursuant to the provisions of the Settlement, after considering, among other things: (i) the substantial benefits to Plaintiff and the Class under the terms of the Settlement; (ii) the uncertainty of being able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (iv) the attendant risks, difficulties, and delays inherent in litigation, especially in complex actions such as this;

---

[1] All initial-capped words refer to the terms and definitions in the Settlement Agreement.

4

and (v) the desirability of consummating this Settlement promptly in order to provide substantive relief to Plaintiff and the Class without unnecessary delay and expense. Marron Decl. ¶¶ 3-11; Polk Decl. ¶¶ 8-11. Triple Leaf has agreed that Plaintiff's Complaint, in compliance with Rule 11 of the Federal Rules of Civil Procedure, was brought in good faith, was not frivolous, and was being settled on a voluntary basis. Marron Decl., Ex. 1 (Settlement Agreement) at § 12.3.

## II.  SUMMARY OF THE SETTLEMENT

### A.  Injunctive Relief

Triple Leaf has agreed to provide injunctive relief by modifying their Products' labels and packaging, as well as its websites, as follows: *See* Marron Decl., Ex. 1 (Settlement Agreement) at §§ 4.1-4.2:

First, the FDA Disclaimer will remain on each Products' packaging in a legible font size and will be conspicuously displayed on the package in a readable font color, in comparison to any background coloring on the package.

Second, Defendant has removed whorled mallow, an ingredient at issue in the Complaint, from each of the Products.

Third, the statement: "Recently, here in the West, people have discovered the value of this ancient system which focuses on aiding the body's own healing mechanisms through restoring harmony and balance[]" has been, or will be, removed from each of the Products' labels and packaging.

Fourth, the statement: "The Chinese System of herbology has been recorded in ancient texts which are studied and employed even today[]" has been, or will be, removed from each of the Products' labels and packaging.

Fifth, the statement: "This time tested knowledge has been passed on from generation to generation over the centuries[]" has been, or will be, removed from each of the Products' labels and packaging.

Sixth, the statement: "Remember when dieting to follow a balanced weight loss diet . . ." has been, or will be, removed from each of the Products' labels and packaging.

Seventh, the warning: "This tea is not intended to be used for chronic constipation or as an aid

5

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

to lose weight" has been, or will be, added to each of the Products' labels and packaging.

**Eighth**, the warning: "Frequent or prolonged use of laxatives may result in dependence on laxatives" has been, or will be, added to each of the Products' labels and packaging.

**Ninth**, in addition to the required Senna Notice, the warning: "Senna may result in abdominal pain, cramping, and loose or watery stools" has been, or will be, added to each of the Products' labels and packaging.

**Tenth**, Defendant has, or will, change the names of two of the three Products. Dieter's Green will be changed to Diet Green and Super Slimming will be changed to Super Slim.

**Eleventh**, for Dieter's Green, the statement: "Research indicates that green tea's antioxidants help promote health metabolism[]" has been, or will be, removed from the Product's labels and packaging.

**Twelfth**, Defendant will modify its website to comport with the modifications to the Products' packaging and labeling, as set forth above.

Plaintiff has assisted Defendant's efforts in relabeling the Products, to ensure that the modified labels comply with the UCL, FAL, CLRA, and FDCA. Triple Leaf shall have eighteen (18) months after the date the Settlement is finally approved to complete the labeling changes referred to in Section 4.1 of the Agreement. Triple Leaf may continue to market and ship product stock with existing labeling for up to eighteen (18) months following final approval, as contemplated by the eighteen month time period it will take to complete the labeling changes, and third-party retailers and distributors may have on hand product stock in existing labeling for some time after the Settlement is finally approved.

**B.      Monetary Relief**

The Settlement does not include a monetary relief component for sound reasons.

First, the primary form of relief under the UCL and FAL is injunctive in nature. *See* Cal. Bus. & Prof. Code §§ 17200, 17500. The harm that these statutes seek to redress is false or deceptive advertising in the marketplace. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009). The Settlement Agreement accomplishes this goal. *See id.*; Settlement Agreement §§ 4.1-4.2. Moreover, the Settlement does not waive personal injury damages and consumers can opt out of the Settlement if

6

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

they wish. *Id.* § 6.1.

Second, the Products cost approximately $3.75 per box at retail. It would be cost prohibitive to implement a claims procedure to refund the small amount representing the difference between the value of the product as advertised and the value of the product as purchased because claims-based settlement administration, not including the amount of any monetary relief to the fund, routinely costs in excess of $250,000. *See* Marron Decl. ¶ 10. Relatedly, Defendant's net profit from sales of the Product were minimal as Triple Leaf is a small family owned and operated business. *See* Lam Decl. ¶ 6; *see Valerio v. Boise Cascade Corp.,* 80 F.R.D. 626, 637 (N.D. Cal. 1978) (Defendant's financial condition is a factor for the court to weigh in considering a class action settlement).

Third, the different forms of injunctive relief Defendant has agreed to are sufficient consideration for Class Members to waive their rights to monetary relief. *See id.* Indeed, Class Members are receiving a substantial direct benefit from the labeling changes, which have been substantially modified as described above. As proof of this claim, the Federal Trade Commission has recognized that "[f]raudulent weight loss products cost consumers millions of dollars each year." In its effort to curb this trend, the FTC sent a letter to media outlets in support of its campaign entitled "Gut Check," which aims to curb fraudulent weight loss products through consumer education and removing false advertising from the marketplace. *See* Marron Decl., Ex. 2. Thus, the FTC, the primary federal law enforcement agency for deceptive advertising, has recognized that removing false advertising from the marketplace is "the most effective front-line defense" to protect consumers. *Id.* The Settlement achieves that FTC goal.

**C.    Costs of Notice and Administration, Attorneys' Fees, and Incentive Award**

All Notice costs shall be paid by Defendant. Marron Decl., Ex 1 (Settlement Agreement) at § 5.1. If the Court orders additional notice above and beyond that cost, such that notice shall comply with all federal and state law and with principles of Due Process, the additional sum shall be paid by Triple Leaf. *Id.* at § 5.2. Nevertheless, the Notice Plan provides a broad range of notice, as discussed in Section III. D., *infra. See also id.*

Defendant has agreed to pay Plaintiff's attorneys' fees and costs in the total aggregate amount of $250,000, subject to court approval. Marron Decl., Ex. 1 (Settlement Agreement) at § 9.1.

7

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Defendant has also agreed to pay an incentive award to the Class Representative up to $1,500 as a reward for her efforts in seeing that this case was brought, litigated, and resulted in substantive labeling changes on behalf of the public. *See id.* Defendant shall bear its own attorneys' fees, costs, and expenses. *Id.* § 9.3.

### III. THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

**A. Standard of Review**

Pre-trial settlement of complex class actions is a judicially favored remedy. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Public policy also strongly "favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). Preliminary approval of a class action settlement "is committed to the sound discretion of the trial judge." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The Court must evaluate the fairness of the settlement in its entirety. *Id.* ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety."). But courts must give "proper deference to the private consensual decision of the parties" because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and whether the settlement is fair, reasonable and adequate. *Id.* at 1027; *see also Knight v. Red Door Salons, Inc.*, No. 08-1520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (citation and quotations omitted).

At the preliminary approval stage, a final analysis of the settlement's merits is not required. Instead, a more detailed assessment is reserved for the final approval after class notice has been sent and class members have had the opportunity to object to or opt-out of the settlement. *See Moore's Fed. Prac.* § 23.165[3] (3d ed. 2005). Accordingly, "[p]reliminary approval of a settlement and notice to the proposed class is appropriate: '[i]f [1] the proposed settlement appears to be the product of

8

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval[.]'" *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation and internal quotations omitted); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("'[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid.'").

Before granting preliminary approval, the court must also determine whether a class exists. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 2248 (1997); *Hanlon*, 150 F.3d at 1019. This Motion will first address the propriety of class certification and then explain why the Court should preliminarily approve the Settlement.

## B. The Court Should Certify the Class for Settlement Purposes[2]

A proposed class may be certified for settlement purposes if it satisfies Federal Rule of Civil Procedure 23(a), "namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019 (citing to *Amchem Prods., Inc.*, 117 S.Ct. at 2248). In consumer class actions, doubts on certifying a class should be resolved in favor of certification. *See City P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 581 (D. Colo. 2002); *accord In re Static Random Access Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *2 (N.D. Cal. Sept. 29, 2008) ("Class actions play an important role in the private enforcement of antitrust actions. For this reason courts resolve doubts in these actions in favor of certifying the class."). For settlement purposes only, Defendant does not object to a finding that the class elements are met. Marron Decl., Ex. 1 (Settlement Agreement) at § 7.1.

### 1. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that "the class is so numerous that joinder of

---

[2] The Settlement Agreement defines the Class as: "All persons who purchased, on or after April 4, 2010, Defendant's Dieter's Green Herbal Tea, Ultra-Slim Herbal Tea, and/or Super Slimming Herbal Tea Products, in all sizes and package iterations, for personal or household use during the Class Period (April 4, 2010 to the Objection Deadline, as set by the Court). Excluded from the Class are Triple Leaf, its employees, parents, subsidiaries, affiliates, officers and directors, and those who purchased the Products for resale." Marron Decl., Ex. 1 (Settlement Agreement) at § 7.1.

all members is impracticable." "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (internal citations and quotations omitted). Generally, classes of forty or more are sufficiently numerous. *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964). Here, Plaintiff seeks to certify a class of nationwide purchasers of three of Defendant's diet tea Products, which are sold in numerous retail stores throughout the United States. The proposed Settlement Class potentially consists of tens of thousands of claimants, which can reasonably be inferred from Defendant's sales volume. *See id.* Therefore, the Class is sufficiently numerous such that joinder of all individual claimants would be impracticable. *See* Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." "All questions of fact and law need not be common . . . The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. "In the Ninth Circuit, the requirements of Rule 23(a)(2) are construed 'permissively.'" *Quintero v. Mulberry Thai Silks, Inc.*, No. C 08-02294 MHP, 2008 WL 4666395, at *3 (N.D. Cal. Oct. 21, 2008) (quoting *Hanlon*, 150 F.3d at 1019). In addition, all class members must "have suffered the same injury." *Wal-Mart Store, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon* ("*Falcon*"), 457 U.S. 147, 157 (1982)). In the context of claims for false or deceptive advertising, there is essentially a single misrepresentation (the product is effective for a health problem) and a single injury (loss of money for a product that did not work as represented). *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011).

Here, Defendant made uniform representations on the Products' labeling and packaging, as well as Defendant's websites, as to the Products' dietary and health-related properties. The labeling was uniform throughout the United States, and did not differentiate for any specific market or region. Lam Decl. ¶ 5. Class Members therefore share a common injury because they were all exposed to the same representations on each Product. *See id.* The Class is also limited to purchasers of the Products. Marron Decl., Ex. 1 (Settlement Agreement) at § 7.1. Thus, all potential Class Members were

10

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
Joint Motion for Order Granting Preliminary Approval of Class Action Settlement

necessarily exposed to Defendant's uniform advertisements at the time of purchase and had the same reason for purchasing the Products – to assist with dieting or to relieve a health symptom. *See Delarosa*, 275 F.R.D. at 589. This action, therefore, presents common questions of law or fact concerning whether Defendant made false or deceptive representations about their Products, and determination of whether the representations were true or deceptive would resolve all claims "in one stroke." *Dukes*, 131 S.Ct. at 2551.[3]

### 3. Typicality

Rule 23(a)(3) sets a "permissive standard," and the named Plaintiff's claims are typical of the class if they are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Also, the representative plaintiff must be a member of the class they seek to represent. *Falcon*, 457 U.S. at 156. Here, the proposed Class Representative has claims typical to the Class and is a member of the Class she seeks to represent. Ms. Johnson sought out Defendant's Products based on the representations the Products were effective for diet, weight loss, and/or health benefits, and suffered the same injury in fact – loss of money in the amount of the purchase price – when the Products were not effective as advertised. *See* Dkt. No. 1 (Complaint) ¶¶ 9, 21, 23, 25-34. All purchasers and Class Members were exposed to Defendant's representations about the Products because the labels, packaging, and websites are the same throughout the United States. *See id.*; *see* Lam Decl. ¶ 5. Since absent Class Members' claims need not be "substantially identical," the inclusion of other Products not necessarily purchased by Plaintiff still presents factual claims that are "reasonably co-extensive" to the Class Representative's claims because the fundamental basis for all the claims is the alleged false or misleading claims about the Products' dietary and health-related capabilities. *See Hanlon*, 150 F.3d at 1020; *Gallucci v. Boiron, Inc.*, No. 11CV2039 JAH NLS, 2012 WL 5359485, at *8-9 (S.D. Cal. Oct. 31, 2012).

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the Class Representative parties "fairly and adequately represent the

---

[3] This case does not pose commonality problems that might arise in an employment class action, where a defendant supervisor may have subjected different plaintiffs to disparate, discriminatory treatment. *See Dukes*, 131 S.Ct. at 2554 (noting commonality could be proven where there was "a uniform employment practice"); *In re Ferrero Litig.*, No. 11-CV-205 H(CAB), 2011 WL 5557407, at *3-4 (S.D. Cal. Nov. 14, 2011).

interests of the class." There are two issues to be resolved for adequacy: (1) whether the Class Representatives have interests that conflict with the proposed Class; and (2) the qualifications and competency of proposed Class Counsel. *In re Live Concert Antitrust Litig.,* 247 F.R.D. 98, 118 (C.D. Cal. 2007). Regarding qualifications of proposed Class Counsel, the Court should analyze "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff does not have interests that conflict with the proposed Settlement Class. Plaintiff and the Class purchased the Products, believing the representations that they were effective for the dietary and health-related claims made on the Products' packaging and lost money as a result when the Products were not as advertised. Moreover, the packaging of each Product is the same throughout the United States. Lam Decl. ¶ 5.

Plaintiff's counsel is also adequate, drafting a Complaint with five potential causes of action. *See* Dkt. No. 1. Further, Plaintiff's counsel performed extensive work to date in successfully mediating and negotiating the proposed Settlement over the course of approximately one year. Marron Decl. ¶¶ 3-11. Plaintiff's counsel has numerous years' experience, and demonstrated success, in bringing the same types of false labeling claims at issue in this action. *Id.* ¶¶ 15-31, Ex. 3. In particular, Plaintiff's counsel has specialized experience and expertise with respect to the FDCA and dietary supplements. *Id.* This action involves a complex statute (FDCA), its implementing regulations, common law theories, and California's statutory requirements for bringing CLRA, UCL, and FAL actions. Proposed Class Counsel are competent, qualified, and will more than adequately protect the Class' interests. Accordingly, Plaintiff requests the Court order that Plaintiff's counsel shall be Class Counsel pursuant to Rule 23(g)(1) (requiring a certified class to also have appointed class counsel). *See* Marron Decl. ¶¶ 3-6, 9-11, 15-31, Ex. 3.

12

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## 5. The Proposed Class Meets the Requirements of Rule 23(b)(2)[4]

Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)).

Plaintiff's claims for restitution are "incidental" to the Complaint's primary claims for various forms of injunctive relief. *Dukes*, 131 S.Ct. at 2557. Plaintiff's primary claims under the CLRA were for injunctive relief, and the UCL and FAL are primarily equitable remedy statutes. *See* Dkt. No. 1; *In re Tobacco II Cases*, 46 Cal. App. 4th at 320. Plaintiff and the Class' claims for restitution were secondary in that any compensation would have flowed directly out of Defendant's misrepresentations or omissions. *See Dukes*, 131 S.Ct. at 2559 (stating that damages are incidental when they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.") (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). Plaintiff's basis for seeking disclaimers on the Products also flow directly from the basis of Defendant's liability to the Class as a whole: the Products' allegedly false and deceptive marketing.

Further, if Defendant's labeling conduct was unlawful as to one Plaintiff, it was unlawful as to the entire Class. *Id.* at 2557 (stating Rule 23(b)(2) injunctive relief is appropriate when defendant's conduct is unlawful "as to all of the class members" and applies "when a single injunction or declaratory judgment would provide relief to each member of the class," thereby benefitting each Class Member equally). Here, the multiple forms of injunctive relief agreed to between the Parties, in the form of consumer disclaimers, corrective advertising and labeling, and removal of potentially harmful ingredients will afford relief to each Member of the Class and benefit the Class equally. This Court should, therefore, certify the Class under Rule 23(b)(2) (and Rule 23(b)(3)) for settlement purposes. For settlement purposes only, Defendant does not object to a finding that the class should be certified

---

[4] The Settlement requires that the Class will be certified under Rule 23(b)(2) and Rule 23(b)(3), or solely under Rule 23(b)(3). In the Ninth Circuit, a class may be certified under both Rules 23(b)(2) and 23(b)(3). *Smith v. Univ. , of Wash. Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000).

13

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

under Rule 23(b)(2) (and Rule 23(b)(3)).  Marron Decl. Ex. 1 (Settlement Agreement) at § 7.1.

### 6.      The Proposed Class Meets the Requirements of Rule 23(b)(3)

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A C.A. Wright, A.R. Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986)). Certification under Rule 23(b)(3) requires: (A) questions of law or fact common to the class predominate over questions affecting only individual members; and (B) a class action is superior to resolution by other available means.  Fed. R. Civ. P. 23(b)(3); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).  For settlement purposes only, Defendant does not object to a finding that the class should be certified under Rule 23(b)(3).  Marron Decl., Ex. 1 (Settlement Agreement) at § 7.1.

The predominance test is satisfied when common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022.  The predominance requirement "does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

Here, Plaintiff would have to prove that the Products' labeling is false and deceptive before any remedy at all can be achieved.  *See* Cal. Civ. Code 1750; Cal. Bus. & Prof. Code §§ 17200, 17500. Thus, the central issue for every Class Member is whether the alleged misrepresentations made on the Products' packaging and/or Defendant's websites were likely to deceive a reasonable consumer.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  Under these circumstances, there is sufficient basis to find that the common question – whether Defendant's advertising was likely to deceive a reasonable consumer – predominates.  *See Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (predominance satisfied when alleged misrepresentation of product's health benefits were displayed on every package); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 159-160 (Ct. App. 2010) (citing *Tobacco II* and holding that "relief under the UCL is available without individualized proof of deception, reliance and injury," and reliance for the CLRA may be presumed classwide where a misrepresentation was material).

14

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Class treatment is also the superior means to adjudicate Plaintiff's claims. For superiority, the Court should consider: "(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." *True*, 749 F. Supp. 2d at 1062; *see also id.* at 1066 (finding superiority met where nationwide advertising was uniform and classwide reliance on the advertising was presumed). A fourth factor – the difficulties of managing the class action – is not considered when certification is used only for settlement. *Id.* at n.12. There are no other, duplicative class action cases against Defendant as of the date of this filing. Nevertheless, should a case arise, resolving these claims in one proceeding will preserve efficiency for the parties and judicial economy. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Continued litigation without class certification could potentially "dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

## C.    The Court Should Grant Preliminary Approval of the Proposed Settlement

### 1.    The Settlement was Reached at Arms' Length

"A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Moreover, if the terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

Here, the settlement negotiations took place between counsel for the Parties and involved the services of a competent, experienced, and independent mediator, the Honorable Ronald M. Sabraw (Ret.) of JAMS. Marron Decl. ¶ 7; Polk Decl. ¶ 6. Plaintiff had an independent law firm – The Law Offices of Ronald A. Marron, APLC – representing her interests and the interests of the putative Class; Defendant is represented by Gordon & Rees LLP. The fact that the Settlement was prompted by an experienced mediator – a retired judge – is one factor that demonstrates the Settlement was anything but collusive. *See, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process

15

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

confirms that the settlement is non-collusive.").  The initial Case Management Conference session with Magistrate Judge Chesney was followed by months of detailed and adversarial negotiations between the Parties, who eventually enlisted the services of an impartial mediator, the Honorable Ronald M. Sabraw (Ret.), with overall negotiations lasting nearly one year before the Settlement Agreement was finalized.  Marron Decl. ¶¶ 3-8; Polk Decl. ¶¶ 5-9.

**2.  The Settlement has no Obvious Deficiencies and does not Improperly Grant Preferential Treatment to the Class Representative or Segments of the Class**

The Settlement Agreement provides the same relief to all Class Members, including the Class Representative.  Marron Decl., Ex. 1 (Settlement Agreement) at §§ 4.1-4.2.  All Class Members will benefit equally from the labeling and website changes Defendant has agreed to undertake.

The Settlement Agreement grants the Representative Plaintiff the right to apply to the Court for an incentive award.  *Id.* § 9.1.  The amount of any award is within the Court's discretion and, thus, will not be unreasonable in light of the Representative Plaintiff's role in this case.  Indeed, "[i]t is appropriate for courts to award enhancements to representative plaintiffs who undertake the risk of personal or financial harm as a result of litigation.  Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit . . ." *Misra v. Decision One Mortg., Co.,* 2009 WL 4581276, at *8 (C.D. Cal. Apr. 13, 2009); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992).  Accordingly, the Settlement Agreement does not give preferential treatment to the Class Representative.

**3.  The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate**

Under Federal Rule of Civil Procedure 23(e), the district court must determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The Ninth Circuit has established several factors that should be weighed when assessing whether a proposed settlement is fair, adequate, and reasonable: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience

and views of counsel; and (7) the reaction of the class members to the proposed settlement.[5] *Hanlon*, 150 F.3d at 1026. "Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at [the preliminary approval] stage . . ." *West v. Circle K Stores*, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006). Even though the Court need not, at this stage, assess the final approval factors, a review of those factors shows that the Settlement Agreement merits preliminary approval.

### i.    The Strength of Plaintiff's Case

"It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case." *Misra,* 2009 WL 4581276, at *7. In this case, Plaintiff is confident in the strength of her claims. Based on extensive investigation and discovery, Plaintiff believes that she could obtain class certification, defeat all dispositive motions filed by Defendant, and proceed to a trial on the merits. Plaintiff further believes that at trial she could meet her burden, including, without limitation, demonstrating the Products do not work or that their labels were deceptive. Nevertheless, Plaintiff recognizes Defendant has factual and legal defenses that, if successful, could potentially defeat or substantially impair the value of Plaintiff's claims. For example, Plaintiff might not be able to: (1) satisfy her burden of demonstrating that the Products are ineffective for everyone, as necessary for a warranty cause of action; (2) overcome the fact that certain claims may be preempted; or (3) retain class certification through trial. "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation." *In re Nvidia Derivs. Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).

### ii.    Complexity, Expense, and Probable Length of Litigation

Plaintiff's claims involve complex issues under the FDCA and the Products' claimed efficacy. The costs and risks associated with continuing to litigate this action would require extensive resources and Court time, such as expert testimony and *Daubert* motions. "Avoiding such a trial and the

---

[5] Another factor identified by the court was the presence of a governmental participant. As there are no governmental parties to this action, this factor is neutral in this case.

subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* at 526.

### iii. The Risks of Maintaining Class Action Status Throughout Trial

While Plaintiff strongly believes that class treatment is appropriate for all reasons discussed herein, there is a genuine risk that Plaintiff will not be able to maintain class action status through trial. Other than consenting to class certification for the purposes of settlement only, Defendant would vigorously oppose class certification. *See* Marron Decl., Ex. 1 (Settlement Agreement) at § 12.4. And, even if the Class were certified, Defendant might seek decertification or modification of the Class. *See*, *e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). In contrast, by settling the action, Defendant effectively accedes to certification and "there is much less risk of anyone who may have actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1041-42. Accordingly, this factor weighs in favor of preliminary approval.

### iv. Amount of Recovery

Defendant agreed to pay the cost of Notice to the Class, and reasonable attorneys' fees and costs, subject to Court approval. Marron Decl., Ex. 1 (Settlement Agreement) at §§ 5.1-5.3, 9.1-9.2. "An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007) ("In an action certified as a class action, the court may award reasonable attorney fees and nontaxable costs authorized by . . . agreement of the parties . . . ." (citing Fed. R. Civ. P. 23(h))). "In fact, courts have encouraged litigants to resolve fee issues by agreement, if possible." *Id.* (citing *Lobatz v. U.S. W. Cellular, Inc.*, 222 F.3d 1142, 1149–50 (9th Cir. 2000) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (upholding district court's award of attorneys' fees where Court had approved attorneys' fees and costs of $5.2 million which were negotiated after final settlement was achieved)).

The cost to Defendant of repackaging its labeling is substantial and should not be

underestimated. Lam Decl. ¶ 7. *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial."). "Courts must tread cautiously when comparing the amount of a settlement to speculative figures regarding what damages might have been won had [plaintiffs] prevailed at trial. Indeed, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1098 (2011) (internal citations and quotations omitted).

Further, the injunctive relief provided for in the Settlement cannot be overlooked. It will address the harm allegedly caused to consumers and provides Plaintiff with the relief she most desires – a change in the Products' labeling. The FTC has recognized that the "most effective front-line defense" for fraudulent weight advertising should be to remove the advertising from the marketplace. Marron Decl., Ex. 2. The value of this substantive and widespread change to Defendant's practices cannot be overstated. *See id.*; *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4 (D. Nev. Oct. 27, 2010) (approving a settlement for injunctive and declaratory relief, finding that it "achieve[d] the goals of the lawsuit").

> v. The Extent of Discovery Completed and the Stage of the Proceedings

"[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation and internal quotations omitted). This is especially true "where there has been sufficient information sharing and cooperation in providing access to necessary data[.]" *Misra*, 2009 WL 4581276, at *8; *see also Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (same). Plaintiff engaged in substantial informal discovery and negotiations, reviewing Defendant's financial information, marketing literature and websites, FDCA and Sherman Law rules and regulations, plus the Products' labeling and packaging, before and after injunctive relief changes were agreed upon. Marron Decl. ¶¶ 3-11. Plaintiff's counsel also reviewed FDA guidance documents on dietary supplements, FTC standards,

and background evidence relating to the Products' claims. *Id*. at ¶ 10. Thus, the Parties had sufficient information to make an informed decision about the terms of the Settlement Agreement. *Id*. at ¶¶ 3-12.

### vi. The Experience and Views of Counsel

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight*, 2009 WL 248367, at *4 (citing *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Secs. Litig.*, 47 F.3d at 378. Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622. Here, "[i]n addition to being familiar with the present dispute, Plaintiff[s'] counsel has considerable expertise in . . . consumer and class action litigation." *Knight*, 2009 WL 248367, at *4; Marron Decl. ¶¶ 15-32, Ex. 3; Polk Decl. ¶¶ 8-11. There is also nothing to counter the presumption that counsel's recommendation concerning settlement is reasonable. *See* Marron Decl. ¶ 12; Polk Decl. ¶¶ 8-11.

### vii. The Reaction of the Class Members to the Proposed Settlement

At the preliminary approval stage, the reaction of the class to the proposed settlement is not known because notice has not yet been distributed. As such, this factor is not as meaningful a consideration as it may be at the fairness hearing, where Class Members will have had a chance to object to the proposed settlement.

**D. The Proposed Form of Class Notice and Notice Plan Satisfy the Requirements of Rule 23**

If the Court's *prima facie* review of the relief offered and notice provided by the settlement are fair and adequate, it should order that notice be sent to the class. Manual for Complex Litig., § 21.632 at 321. Notice of a class action settlement must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, Defendant does not sell its Products directly to consumers, but only to third party retailers and distributors, who sell the Products on store shelves. Thus, individual notice is not possible; and notice by publication is the "best notice practicable under the

20

*Johnson v. Triple Leaf Tea Inc.*, Case No. 3:14-cv-01570
JOINT MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

circumstances." *See id.*

The proposed Notice and Notice Plan are adequate, constituting the best possible notice under the circumstances. *See* Marron Decl., Ex. 1 (Settlement Agreement) at Exs. A-B, D. The Notices are neutral, and written in an easy-to-understand clear language, giving consumers (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can exercise their right to object to the settlement; (4) an explanation that any claims against Defendant that could have been litigated in this action will be released; (5) the names of counsel for the Class and information regarding attorney's fees and incentive awards; (6) the fairness hearing date, along with an explanation of eligibility for appearing; and (7) the settlement web site where additional information, including Spanish translations of all notices. *Id.*; *see also id.* § 5.4.1. The Notices are also eye-catching, and mirror the exemplar notices set forth in the Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist (2010).

The Notice Plan involves (1) creation of a dedicated Settlement Website, with online claims form submission, posted documents regarding the case, and a downloadable claim form; (2) a toll-free number that potential Class Members may use to obtain further information, which is available 24-hours a day for 6 months; (3) 60 days of online banner advertising on Google Display Network (10 million impressions), which includes national outlets such as USAToday.com, Time.com, USNews.com, and regional outlets such as LATimes.com, CBS2.com, FresnoBee.com, Fox5SanDiego.com, and targeted websites such as WebMD.com and MensHealth.com; (4) 60 days of Facebook online banner advertising (5 million impressions); (5) local publication in the *San Francisco Examiner*, 1/6 page size, 4 insertions, sufficient to meet CLRA requirements; and (5) national news media publication in *USA Today* (Mon.-Thurs., 2 insertions, circulation of 1.7 million). Settlement Agreement, Ex. D.

The online advertising efforts are estimated to generate 15 million impressions, meaning the number of times a person will be exposed to the banner notice. *See id.* The Summary Notice will be targeted to publications and websites that consumers of the Products are likely to read, and will direct consumers to the Settlement Website for more information. *See id.*; Settlement Agreement, Ex. B.

The Parties have selected a qualified third-party Class Action Administrator with particular

expertise in targeted online notice, KCC to disseminate the notice and process claims. *See id.*, Ex. D. In light of the foregoing, the Court should approve the form of Notice, the manner of notice in the Notice Plan, and the chosen Claims Administrator.

**E.** **The Proposed Timeline for Events Should be Adopted**

| Event | Date |
|---|---|
| Preliminary Approval Granted | Day 1 |
| Class Settlement Website Activated | On or before Day 15 or as soon as reasonably possible after Order Granting Preliminary Approval |
| Notice First Published in Print Sources | Day 30 or as soon as reasonably possible after Order Granting Preliminary Approval |
| Class Counsel to File Motion for Attorney's Fees and Costs and Incentive Award | 45 days before Final Approval Hearing |
| Last Day to Postmark or Submit Objection Online | 30 days before Final Approval Hearing |
| Parties to File Motion for Final Approval | 21 days before Final Approval Hearing |
| Final Approval Hearing | As set by the Court (preferably 120 days after Order Granting Preliminary Approval is entered) |

Accordingly, the Parties request the Court schedule the Final Approval Hearing 120 days after the order granting preliminary approval, or as soon thereafter as practical.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.    CONCLUSION

For the foregoing reasons, the Parties jointly respectfully request this Court grant the relief requested.

Dated:  May 15, 2015                    Respectfully submitted,

*/s/ Ronald A. Marron*
RONALD A. MARRON
*ron@consumersadvocates.com*
SKYE RESENDES
*skye@consumersadvocates.com*
**LAW OFFICES OF RONALD A. MARRON**
651 Arroyo Drive
San Diego, California 92101
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665

Dated: May 15, 2015                    **GORDON & REES LLP**
*/s/ Ryan B. Polk*
RYAN B POLK
*rpolk@gordonrees.com*
**GORDON & REES LLP**
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Fax: (415) 986-8054

* Counsel for Plaintiff, Ronald A. Marron, attestS that, pursuant to Local Rule 5-1(i), Defendant's counsel, Ryan B. Polk, has reviewed the contents of this Joint Motion for Preliminary Approval of Settlement and authorized placement of his electronic signature on this document.  Counsel for Plaintiff further attests that they has on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.